## 35811.   CALDWELL *v.* KNIGHT.

748

Decided October 3, 1955—Rehearing denied October 13, 1955.

*Clower & Anderson,* for plaintiff in error.

*Matthews, Maddox, Walton & Smith,* contra.

Townsend, J. ▮ Code § 84-501 provides as follows: "The term 'chiropractic' as used in this Chapter means the adjustment of the articulation of the human body, including ilium, sacrum

and coccyx, and in the use of electricity X-ray photography, but the X-ray shall not be used for therapeutical purposes." Code § 84-509 provides as follows: "Chiropractors who have complied with the provisions of this Chapter shall have the right to adjust patients according to specific chiropractic methods and shall observe State, municipal and public health regulations. . . Chiropractors shall not prescribe or administer medicine to patients, perform surgery, nor practice obstetrics or osteopathy." Nothing in these Code sections prohibits the use of the rhythmic traction machine used by the defendant in making an adjustment on the plaintiff, and the petition does not allege that the machine was an X-ray used for therapeutical purposes, or was not according to specific chiropractic methods, or involved the practice of surgery, osteopathy or any other prohibited act. Accordingly, this allegation of negligence per se was properly stricken on demurrer.

■ The evidence on behalf of the plaintiff was to the effect that he had been suffering for 4 or 5 months from a slight pain in his lower back; that he had received several manual adjustments by the defendant; that on the day in question, after the manual adjustment, the defendant laid him face down on a table, attached a strap around his chest and another around his hips, turned on a motor, and "it started to pulling, an alternate pull, pulling me apart and then releasing and pulling again"; that this continued 10 or 15 minutes; that during this time the defendant left the room and no one remained with the plaintiff; that when the defendant returned, cut off the motor and released the straps, the plaintiff attempted to pull up his leg to get off the table and was seized by excruciating pain and was unable to rise; that he rolled off the table to the floor; that he remained in terrific pain and was unable to put any weight on his feet in order to get in position where he could get up; that his body became saturated with perspiration and he was forced to cry out in pain when an effort was made to raise him; that after 30 or 45 minutes he asked the defendant to get him a doctor to give him a shot of novocaine, to which the defendant replied he would get something and gave him some tablets; that after an hour and a half he again requested a doctor, but the defendant said, "I have something else", and rubbed some ointment on his back; that

eventually an ambulance had to be called and he was carried to his home; that after remaining in bed, where he was placed by others, for about 20 minutes, it was necessary to get another ambulance and take him to the hospital, where he remained for 10 days. The witnesses and hospital charts introduced in evidence established that he remained in the hospital for 10 days; that he was unable to perform his bodily functions, was catheterized 17 times over an 8-day period and given enemas; was kept under drugs for his pain during most of this time, was kept in traction, and when discharged at the end of the 10-day period, was taken home in an ambulance and remained in bed for most of another week, and lost 21 days from work; that since then he had a recurrence of the trouble and lost another week from work; that prior to this treatment he never had suffered pain of that nature, been unable to urinate, and so on. A physician who was called to attend him at the hospital gave as his opinion that the plaintiff had suffered trauma, a contusion of his back to the muscles with abdominal distention which indicated mild partial paralysis, perhaps, of the nerves to the bladder and intestinal tract; that he was suffering with lumbar muscle with possible small retroperitoneal hematoma, that is, a small hemorrhage, the usual cause of which is injury or trauma; that he found nothing which would cause him to attribute the condition to disease rather than injury. As to the rhythmic traction machine and traction tables used by the defendant, the physician testified on direct examination that if there is any such table as that used in the whole field of medical practice as a method of treating low back pain, he did not know of it. On cross-examination he stated, "I have not seen the machine. I would not say it is not used by recognized medical authorities in the treatment of low back pain," and also, "I know nothing about the use of the table. That's all I can say. . . I don't deny that traction tables are used, and that traction of this sort is an accepted method of practice."

On a motion for nonsuit, the testimony should be construed in favor of maintaining the action, and if from the testimony and inferences therefrom there is even slight evidence to sustain the action, the motion should be denied. *Ellison* v. *Evans*, 85 *Ga. App.* 292 (69 S. E. 2d 94), and citations. On such motion the only question is whether the plaintiff has proved the facts charged

without at the same time disproving his right to recover by establishing the existence of other undisputed facts which show he is not entitled to a verdict. Code § 110-310; *Clark* v. *Bandy,* 196 *Ga.* 546 (27 S. E. 2d 17). It is here contended that the trial court properly granted the nonsuit in that the plaintiff failed to prove any of his allegations of negligence, the plaintiff not having proved by expert testimony that the defendant failed to use that degree of care and skill generally followed by other like practitioners in the community. In *Pilgrim* v. *Landham,* 63 *Ga. App.* 451 (3) (11 S. E. 2d 420) the following is held: "What is a proper method of diagnosing a case is a medical question to be testified to by physicians as expert witnesses. Laymen, even jurors and courts, are 'not permitted to say what is a proper method of diagnosing a case for discovering the nature of an ailment. Results of the diagnosis and treatment, if so pronounced as to become apparent, as where a leg or limb which has been broken is shorter than the other after diagnosis and treatment, may be testified to by anyone. James *v.* Grigsby, (Kan.) 200 Pac. 267. And where, measured by the method shown by medical witnesses to be negligence and the evidence, a bad result is shown, it is the province of the jury to say whether the result was caused by the negligence." In Farrah *v.* Patton, 99 Col. 41 (59 Pac. 2d 76), a case fairly similar on its facts in that manipulation by the defendant osteopath of the plaintiff's neck resulted in similar pain, paralysis of bodily functions and other symptoms, the court said, "The trial court was mistaken in holding that there was no prima facie showing of negligence, because no osteopath testified concerning the standard of osteopathic treatment in similar cases, and therefore it was not shown that defendant departed from such standard. . . As applied to many cases, the rule invoked by defendant is sound, but it is not of universal application. In certain types of malpractice cases, the law is that negligence can be proved by nonexpert witnesses. Where, as here, recovery is sought not for negligence in making an incorrect diagnosis or in adopting the wrong standard of treatment, but for the performance of an operation in a negligent manner, any pertinent evidence having a fair tendency to sustain the charge of negligence is sufficient to take the case to the jury." In Jackson *v.* Mountain Sanitarium & Asheville Agricultural School, 234 N. C.

222 (67 S. E. 2d 57), it is pointed out that while usually what is the standard of care required of a physician is one concerning highly specialized knowledge with respect to which a layman can have no information, in which case the court and jury must be dependent on expert testimony, there being no other guide, this does not mean that proximate cause can never be established except through the medium of expert testimony. In Olson v. Weitz, 37 Wash. 2d 70 (221 Pac. 2d 537), it is stated that the rule that the allegations of a malpractice case can be established only by medical testimony is sound only where soundly applied. Quoting from Swanson v. Hood, 99 Wash. 506, 512 (170 Pac. 135): "There is an obvious distinction between a claim of negligence in the choice of methods of treatment and a charge of negligence in the actual performance of the work or treatment after such choice is made. . . As to the second, a charge of negligent performance, where there is any evidence tending to show such negligence, the case is for the jury, as in other cases of negligence, whenever upon the evidence the minds of reason- able men might differ." In Ambrosi v. Monks (D. C.) (85 Atl. 2d 188) it was held that the plaintiff's testimony established that the injury to her tooth occurred at the time the defendant successfully abstracted an adjacent tooth; the injury was shown by medical testimony; no expert testimony was needed to estab- lish that the extraction of one tooth in a reasonably careful manner would not ordinarily result in injury to other unaffected teeth, and that accordingly such evidence made out a prima facie case, calling for explanation on the part of the defendant. See also Christie v. Callahan, 124 Fed. 2d 825; Goodwin v. Hertzberg, 201 Fed. 2d 204, holding that there are many cases where the facts alone may prove negligence, and the opinions of persons skilled in the particular science to show unskillful and negligent treat- ment are not necessary.

We hold here that if a defendant chiropractor, in giving a pa- tient an adjustment, were to take a hammer and shatter his backbone with a blow, or if a surgeon in performing an appen- dectomy were to take a knife and unintentionally slit the patient's throat, a nonexpert jury could find such conduct to be negligence without the aid of expert testimony to that effect. In this case the plaintiff testified that immediately after being subjected to

a pushing and pulling action against his spinal column for a period of 10 or 15 minutes as the result of the operation of a machine while he was strapped on a table, and during which time no person was in the room to control or adjust its operation he was seized by excruciating pain which completely disabled him and which continued for over a week to such extent that he was unable to perform the most elementary physical functions. His physician testified that in his opinion these results were produced by trauma and evidenced by mild paralysis, possible hemorrhage and other internal symptoms. Construing this evidence and the inferences therefrom in favor of the plaintiff, as must be done on nonsuit, a prima facie case was made out to establish negligence in administering the mechanical treatment, and it was not necessary to prove by expert medical witnesses that the treatment was in fact unskillfully performed.

The trial court erred in granting the motion for nonsuit.

*Judgment reversed. Gardner, P. J., and Carlisle, J., concur.*