## 55295. HUGHES v. MALONE.

BIRDSONG, Judge.

Hughes appeals the grant of summary judgment entered in behalf of Malone after the filing of a complaint alleging legal malpractice by Malone in his representation of Hughes.

The facts show that Hughes entered into a fraudulent scheme with one of his ex-employees (one

Logan), to print counterfeit U. S. currency. Hughes made the negatives from which Logan made the plates and arranged for the currency to be printed; approximately $5,000,000 in counterfeit $20 bills was produced. Unknown to Malone, one of his employees, one Goode, was involved in the counterfeiting scheme and was responsible to some degree for the distribution of the bogus bills. According to Hughes, Goode instructed Hughes as to how and where to transport the printed currency to a pick-up point for further transportation and ultimate distribution. Two persons unknown to Hughes picked up the currency and made distribution in Miami of $2,000,000 to purchasers who were in fact undercover police agents. The currency was packaged in unique boxes which were traced back to Hughes. A search of Hughes' place of business revealed no incriminating evidence. However, the then-present occupant of the building (Logan, who prepared the plates and arranged for the printing of the money) acknowledged to the investigating agents that Hughes had a possessory interest in other buildings. Logan admitted to possession of a key to one of these buildings and agreed to take the investigating agents to the other building. Logan also had a possessory interest in the second building. He opened the building for the agents and the search uncovered the plates, the press upon which the money was printed and some scraps of the counterfeit bills. The individual who actually printed the bills (one Cook) was apprehended and gave a statement. Cook did not know of Hughes' involvement but implicated Logan. At this point, Hughes and Logan went to Malone who agreed to represent all three of the persons involved, Hughes, Logan (the ex-employee) and Cook (the actual printer of the bills). Malone was informed at the outset by Hughes that Goode was involved in the scheme. By way of affidavit and deposition, it was shown that Malone acquainted himself with the circumstances of the taking of Cook's confession, with the circumstances of the search of Hughes' building undertaken without benefit of a warrant but consented to by Logan, and with the nature and extent of the government's case against Hughes by examination of the government's file. There was evidence that Hughes

requested Malone to interview the two distributors who were in jail in Miami. Malone talked to the attorney for these two men and determined that the two would neither cooperate with their own attorney nor admit anything more than that they had been apprehended with the contraband. As a result, Malone did not attempt to interview either man. Additionally, Hughes informed Malone that the federal judge before whom Hughes would appear was possibly biased against Hughes because of past personal relations. Because of possible bias and alleged adverse pre-trial publicity, Hughes discussed the possible advantages of requesting the judge to recuse himself and a change of venue. Under these circumstances, Malone advised Hughes to enter a plea of guilty to a count of transporting counterfeit money, thereby obviating the risk of facing the more serious charges of manufacturing and distributing counterfeit money. Throughout this period, Hughes was emotionally distraught.

Hughes asserts that he was advised by Malone that the U. S. attorney required an immediate answer as to the nature of a plea. If a plea of not guilty were not forthcoming, all charges would be submitted to a grand jury, involving greater risk and further adverse notoriety. Further, Hughes asserts that Malone advised him that the sentencing judge would be advised that the government was not seeking incarceration, that because Hughes was a first offender, he would receive a probated sentence and a fine, and that if he (Hughes) were not satisfied with the sentence, he could withdraw his guilty plea and proceed with a plea of not guilty.

Hughes sought the advice of another attorney as to the advisability of entering a guilty plea to the transporting charge. Upon being assured that Malone's recommendation was sound, Hughes entered a plea of guilty. At the plea proceedings, Hughes admitted to the judge that he was guilty and was entering the plea voluntarily and without promise or hope of reward. He was sentenced to seven years. Two years after he was sentenced, Hughes brought this legal malpractice suit alleging that Malone fraudulently coerced him into pleading guilty by misrepresenting the following facts:

there was no urgency to a decision as to how to plead; there was no threat to refer a plea of not guilty to a grand jury; an entered plea of guilty could not be withdrawn in a federal district court; the sentencing judge was not informed that the government was not seeking penitentiary time; and the plea was enticed to protect Malone's employee, Goode, thus rendering a serious conflict of interest. Hughes also complained that Malone demonstrated fraud and was negligent in his representation by failing to file motions to suppress the evidence produced by the search without a warrant, to suppress the confession of the co-accused Cook, to change venue, to recuse the judge, to interview witnesses in Miami, to seek psychiatric evaluation, or to take any action to minimize the adverse publicity. In a third count, Hughes asserts that Malone breached his contractual obligations to represent Hughes in a legally responsible way. The trial court was presented with approximately 1,000 pages of affidavits, depositions and other records to assist it in reaching a decision on the motion for summary judgment. *Held:*

This particular legal malpractice claim is based upon Hughes' complaint that Malone failed generally to afford him reasonable representation. The initial requirement for establishing liability is that there be a duty. This arises from the attorney-client relationship itself. *Lewis v. Foy,* 189 Ga. 596, 598 (6 SE2d 788); *O'Kelley v. Skinner, Wilson & Beals,* 132 Ga. App. 792 (2) (209 SE2d 242). Once this relationship was shown to exist, a duty devolved upon Malone, as Hughes' attorney, to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. *Cox v. Sullivan,* 7 Ga. 144, 148 (50 AD 386); Neel v. Magana, Olney, Levy, Cathcart & Gelfand, 98 Cal. Rptr. 837 (491 P2d 421). Although an attorney is not an insurer of the results sought to be obtained by such representation, when, after undertaking to accomplish a specific result, he then wilfully or negligently fails to apply commonly known and accepted legal principles and procedures through ignorance of basic, well-established and unambiguous principles of law or through a failure to act reasonably to

protect his client's interests, then he has breached his duty toward the client. As the legal profession is at best an inexact science, a breach of duty arises only when the relevant, i.e., legal principles or procedures are well settled and their application clearly demanded, and the failure to apply them apparent; otherwise, an attorney acting in good faith and to the best of his knowledge will be insulated from liability for adverse results. Hodges v. Carter, 239 N. C. 517, 520 (80 SE2d 144, 146).

In malpractice actions against lawyers, as in the case against other professionals, it is essential to the maintenance of a cause of action that competent evidence be presented as to the reasonableness of the lawyer's conduct. "Attorneys are very properly held to the same rule of liability for want of professional skill and diligence in practice, and for erroneous or negligent advice to those who employ them, as are physicians, surgeons, and other persons who hold themselves out to the world as possessing skill and qualification in their respective trades or professions." Citizens' Loan, Fund & Savings Assn. v. Friedley, 123 Ind. 143, 145 (23 NE 1075), cited with approval in *Berman v. Rubin,* 138 Ga. App. 849, 853 (227 SE2d 802). Hence, except in clear and palpable cases (such as the expiration of a statute of limitation), expert testimony is necessary to establish the parameters of acceptable professional conduct, a significant deviation from which would constitute malpractice. *Howell v. Jackson,* 65 Ga. App. 422 (16 SE2d 45); *Pilgrim v. Landham,* 63 Ga. App. 451 (4) (11 SE2d 420). See Dorf v. Relles, 355 F2d 488 (7th Cir.); Brown v. Gitlin, 19 Ill. App. 3d 1018 (313 NE2d 180); Sanders v. Smith, 83 N. M. 706 (496 P2d 1102); Walters v. Hastings, 84 N. M. 101 (500 P2d 186). The reason for this requirement is simply that a jury cannot rationally apply negligence principles to professional conduct absent evidence of what the competent lawyer would have done under similar circumstances, and the jury may not be permitted to speculate about what the "professional custom" may be. Expert evidence as to the "professional custom" is required in malpractice actions against other professionals. *Washington v. City of Columbus,* 136 Ga. App. 682 (222 SE2d 583) (physician); Stallcup v.

Coscarart, 79 Ariz. 42 (282 P2d 791) (dentist); Paxton v. Alameda County, 119 Cal. App. 2d 393 (259 P2d 934) (architect); Tremblay v. Kimball, 107 Me. 53 (77 A 405) (pharmacist). Consistence demands a similar standard for attorneys. *Berman v. Rubin,* p. 854, supra.

In the practice of the medical arts, there is a presumption that medical or surgical services are performed in an ordinarily skillful manner, and the burden is on the one receiving such services to show a lack of due care, skill and diligence. *Ga. Northern R. Co. v. Ingram,* 114 Ga. 639, 640 (40 SE 708); *Akridge v. Noble,* 114 Ga. 949, 958 (41 SE 78); *Fincher v. Davis,* 27 Ga. App. 494 (2) (108 SE 905). And in such a case, as stated above, the proof ordinarily required to overcome such presumption of care, skill and diligence is that given by others qualified in the respective professional field as expert witnesses. See *Anderson v. Crippen,* 122 Ga. App. 27, 30 (176 SE2d 196). We are satisfied that a similar presumption attaches to services rendered by an attorney and that presumption may be overcome only by competent, expert testimony showing that the services were not performed in an ordinarily skillful manner.

"[W]hile the standard of care required of an attorney remains constant, its application may vary. [Cit.] Two important considerations in particularizing this rather general standard in a given case are the number of options available to the attorney and the amount of time which he had to consider them." *Berman v. Rubin,* 138 Ga. App. 849, 851, supra. The effectiveness of representation may also be judged by the familiarity of counsel with the case, including counsel's opportunity to investigate and diligence in doing so, in order meaningfully to advise the client of his options. Windom v. Cook, 423 F2d 721; Calloway v. Powell, 393 F2d 886, 888.

In this case, Hughes did not offer evidence to establish that because of a lack of investigation Malone was unaware of an unlawful search and seizure, or of the possibility of an involuntary confession, the effect of which may have adversely affected Hughes' right to a fair trial. In other words, Hughes does not argue a failure of investigation.

Alternatively, Hughes did not contend that a

reasonable investigation would have established the presence of bias on the part of the judge or the probable effect of adverse publicity on a jury in that geographical area. To the contrary, it is admitted by both parties that Malone was aware of the search, the confession, the lack of communication between Hughes and the two distributors in Miami, the possible bias of the judge, the publicity, the mental state manifested by Hughes, the knowledge that Goode was involved to some extent, and every other fact alluded to by Hughes in his complaint. Thus, the evidence presents not a case of deliberate or negligent inaction but a case of full knowledge and deliberate tactical choices made in complete good faith. At no point does Hughes affirmatively show by expert legal opinion that the search was clearly illegal, that the confession was clearly involuntary, that motions for change of venue and recusal were clearly demanded or would have been successful if made, or that he was coerced into pleading guilty to an offense of which he was not guilty. In fact, he has consistently admitted that he was guilty not only of the transportation offense of which he was convicted and sentenced, but also of the manufacture and distribution of the counterfeit money. The record made clear that after some hesitation, Hughes received the advice of two attorneys, his family, friends, and co-accused to enter a plea of guilty. Even assuming that Hughes was misinformed as to the severity of the potential sentence, the timing of the decision of how to plead, and the ability to withdraw the plea once made if dissatisfied with the result, Hughes has not shown that except for the advice of Malone he would not have entered the plea of guilty. In fact, the record shows that Malone was insistent that the decision as to a plea be made by Hughes. When a defendant states on the record that his plea was not induced, he will not later be heard to claim the contrary. *Barksdale v. Ricketts,* 233 Ga. 60, 61-62 (209 SE2d 631).

We are here confronted, as we view it, with the disgruntled complaint of a disappointed but guilty client who received a more stringent sentence than anticipated. Hughes has failed to establish that a reasonable attorney would have reached different conclusions from Malone. As to each of the alleged inactions, Malone has shown a

consideration of each problem and a choice which he asserts had Hughes' best interest at its core. "The lack of effective representation of counsel means representation so lacking in competence that it becomes the duty of the court or the district attorney to observe it and correct it. Williams v. Beto (CCA5), 354 F2d 698, 704." *Sheets v. State,* 143 Ga. App. 180, 181 (237 SE2d 674).

In sum, Hughes' complaint alleges ineffective legal representation, drawing that conclusion from the results of a gamble made but lost. No expert evidence was offered in support of the allegations of malpractice. See *Berman v. Rubin,* p. 853, supra. In addition to denying Hughes' allegation, Malone offered extensive evidence showing a careful consideration of the case, tactical decisions relating to every turn in its development, and the obtaining of an agreement from the prosecutor to allow the client to plead guilty to a lesser offense in exchange for the dropping of two more serious offenses, and then only after concluding that a finding of guilty as to all offenses was most probable in the event that Hughes pleaded not guilty.

It is true that while the burden may be on the complainant upon the trial of the case to prove all the necessary elements of the cause of action, such burden does not rest upon the plaintiff on a motion for summary judgment by the defendant. There is no duty upon the plaintiff to produce evidence until the defendant's evidence pierces the plaintiff's pleadings and demands a finding in defendant's favor on the particular issues of fact made by the pleadings. To satisfy the moving party's burden, the evidentiary material before the court, if taken as true, must establish the absence of any genuine issue of material fact, and it must appear that there is no real question as to the credibility of the evidentiary material, so that it may be taken as true. If the nonexistence of any genuine issue of material fact is established by such credible evidence, and on the facts and the law, the movant is entitled to judgment as a matter of law, the motion should be granted, unless the opposing party shows good reason why he is at the time of the hearing unable to present facts in opposition to the motion. 6 Moore's Federal Practice 56-463, ¶ 56.15[3]. *Durrett v.*

*Tunno,* 113 Ga. App. 839 (149 SE2d 826). See *Morrow v. Thomason,* 127 Ga. App. 309 (193 SE2d 256). Once the movant has carried his burden to show the absence of any genuine issue of fact, the respondent must offer refuting evidence. Respondent cannot rely upon the mere conclusions of his pleadings. *Smith v. Standard Oil Co.,* 227 Ga. 268, 271 (2) (180 SE2d 691).

In the instant case, the occurrence of each of the acts or omissions alleged as fraud, negligence, or breach of contract are admitted. Thus, there is no contested issue of *material* fact. All of these acts or omissions with the exception of Hughes' plea of guilty are products of the exercise of tactical, legal judgment and relate to questions of law. These legal questions quite properly were ruled upon by the trial court in considering the motion for summary judgment. See Martin v. Hall, 20 Cal. App. 3d 414 (97 Cal. Rptr. 730, 53 ALR3d 719). Juries should not pass upon the legal niceties involved in the exercise of legal tactics and judgments *in the absence of a showing by competent legal expert opinion* that those actions or omissions were unreasonable or were not the product of a reasoned and knowledgeable exercise of legal training and experience. See Woodruff v. Tomlin, 423 FSupp. 1284. Hughes has failed to rebut by affirmative evidence either the presumption of competence attaching to the performance of legal counsel or the prima facie showing by Malone as to the reasonableness of his conduct.

Succinctly stated, it may be said that in a legal malpractice case, the presumption is that the legal services were performed in an ordinarily skillful manner. This presumption remains with the attorney until the presumption is rebutted by expert legal testimony; otherwise, the grant of a summary judgment in favor of the attorney is proper. Should this presumption be rebutted by expert legal testimony there is presented for the jury a question of fact.

In view of our previous discussion, it follows that there is no dispute as to any *material fact* pertaining to the reasonableness of Malone's legal representation of Hughes in his criminal defense; accordingly, the trial court properly granted summary judgment to Malone.

*Judgment affirmed. Bell, C. J., and Shulman, J.,*

*concur.*

ARGUED JANUARY 30, 1978 — DECIDED MAY 3, 1978 —
REHEARING DENIED JUNE 22, 1978.

*James K. Jenkins, Timothy N. Skidmore,* for appellant.

*Watson, Spence, Lowe & Chambless, G. Stuart Watson,* for appellee.