## 65761. KILLINGSWORTH v. POON.

CARLEY, Judge.

Appellant-patient appeals from the grant of summary judgment to appellee-physician in this medical malpractice case.

On November 16, 1981, appellant went to the office of appellee, complaining of a minor muscle pain in her left shoulder. After

examining appellant, appellee diagnosed the problem as a pulled muscle and, as part of the treatment, injected two syringes into appellant's shoulder area. Upon receiving the injections, appellant experienced immediate chest pain and, on the following day, she went to another doctor with complaints of that chest pain and of shortness of breath. At that time, it was discovered that appellant had sustained a collapsed lung. Appellant filed the instant suit, alleging that, as a result of appellee's negligent injections to relieve muscular pain, the membrane of appellant's left lung had been penetrated, causing her to suffer severe pain throughout her entire chest cavity.

In support of his motion for summary judgment, appellee submitted his own affidavit. Appellee's affidavit contained only the general statement that, in his own professional medical opinion, he had followed and complied with the standards of the medical profession generally, and that his treatment of appellant had been rendered in conformity with such standards. Appellant opposed the appellee's motion with her own affidavit, and the affidavit of Dr. Norman Johnson, the physician who had examined and treated appellant the day after she received the injections from appellee. Upon appellee's motion, the trial court deleted certain portions of Dr. Johnson's affidavit. After the trial court's deletions, Dr. Johnson's affidavit stated in relevant part that, from his examination of appellant, the only apparent cause of her punctured lung was "the injections she received on the previous day. However, nowhere in the affidavit did Dr. Johnson state that it was his expert medical opinion that in administering the injections appellee had failed to exercise a reasonable degree of care and skill required under the circumstances.

OCGA § 51-1-27 (Code Ann. § 84-924) provides that "[a] person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill shall be a tort for which a recovery may be had." It has been held that "[t]he degree of care and skill required is that which, under similar conditions and like surrounding circumstances is ordinarily employed by the profession generally." *Hayes v. Brown,* 108 Ga. App. 360, 363(1) (133 SE2d 102) (1963). The presumption in a medical malpractice case is that "the medical or surgical services were performed in an ordinarily skilful manner, and the burden is on the one receiving the services to show a want of due care, skill, and diligence. [Cits.]" *Shea v. Phillips,* 213 Ga. 269, 271(2) (98 SE2d 552) (1957). See also *Summerour v. Lee,* 104 Ga. App. 73(2) (121 SE2d 80) (1961); *Washington v. City of Columbus,* 136 Ga. App. 682, 687 (222 SE2d 583) (1975).

To overcome this presumption of due care and to show negligence in a medical malpractice case, it is usually required that the patient offer expert medical testimony to the effect that the defendant-doctor failed to exercise that degree of care and skill which would ordinarily have been employed by the medical profession generally under the circumstances. *Jackson v. Tucker,* 118 Ga. App. 693(1) (165 SE2d 466) (1968); *Pilgrim v. Landham,* 63 Ga. App. 451, 454 (11 SE2d 420) (1940); *Summerour v. Lee,* supra at 74; *Washington v. City of Columbus,* supra at 687. "The court and jury must have a standard measure which they are to use in measuring the acts of a doctor to determine whether he exercised a reasonable degree of care and skill; they are not permitted to set up and use any arbitrary or artificial standard of measurement that the jury may wish to apply. The proper standard of measurement is to be established by testimony of physicians, for it is a medical question. [Cits.]" *Hayes v. Brown,* supra at 363(1).

The courts of this state have repeatedly held that the only exceptions to the requirement that the plaintiff-patient must produce expert medical testimony showing a deviation from the applicable standard of care in opposition to the defendant-doctor's medical testimony so as to create a genuine issue of material fact and avoid summary judgment, are when the facts concerning the alleged malpractice, "although connected with medicine, are so well known as not to require expert testimony to place them before the jury, or where the case concerns matters which juries must be credited with knowing by reason of common knowledge. [Cits.]" *Jackson v. Tucker,* supra at 693. Stated another way, this evidentiary burden on plaintiff-patients to produce such expert medical testimony is applicable except in those cases where the asserted actionable negligence would appear to be so clear from the evidence then of record that expert testimony would, at that point, otherwise be unnecessary to establish a prima facie case of malpractice. *Terrell v. West Paces Ferry Hospital,* 162 Ga. App. 783 (292 SE2d 433) (1982); *Hughes v. Malone,* 146 Ga. App. 341, 345 (247 SE 2d 107) (1978). Examples often cited by Georgia courts of what would be such "pronounced results" indicative of possibly negligent medical treatment include those evinced when a doctor, while stitching a wound on his patient's cheek, by an awkward move, thrusts his needle into the patient's left eye, or where a leg or limb which has been broken is shorter than the other after treatment. *Shea v. Phillips,* supra at 271-272; *Summerour v. Lee,* supra at 75; *Caldwell v. Knight,* 92 Ga. App. 747, 751 (89 SEd 900) (1955).

However, we note that although the above facts are often cited as

"pronounced results" indicative of possibly negligent medical treatment, they have only been cited as *examples,* as such factual situations have apparently not been directly before Georgia courts. See *Shea v. Phillips,* supra at 271. In fact, the only Georgia case that we have found where possibly negligent actions by the doctor appeared so clearly from the record that a prima facie case of medical malpractice was made out even though the plaintiff did not produce an expert's medical testimony concerning the applicable standard of care in response to the defendant-doctor's affidavit denying a breach of that standard was in *Caldwell v. Knight,* supra. In *Caldwell,* the plaintiff-patient alleged that he suffered severe injuries as the result of the defendant-chiropractor's negligent treatment. The evidence revealed that the defendant incorrectly strapped a machine to the plaintiff which subjected him to pulling and stretching of his spinal column, during which time the plaintiff was left unattended. On these facts, this court held that the plaintiff had made out a prima facie case of malpractice even though the plaintiff had not established "by expert testimony that the defendant failed to use that degree of a care and skill generally followed by other like practitioners in the community." *Caldwell v. Knight,* supra at 751. In so doing, we cited with approval the proposition that, " '[i]n certain types of malpractice cases, the law is that negligence can be proved by nonexpert witnesses. Where, as here, recovery is sought not for negligence in making an incorrect diagnosis or in adopting the wrong standard of treatment, *but for the performance of an operation in a negligent manner, any pertinent evidence having a fair tendency to sustain the charge of negligence is sufficient to take the case to the jury.'* . . . We hold here that if a defendant chiropractor, in giving a patient an adjustment, were to take a hammer and shatter his backbone with a blow, or if a surgeon in performing an appendectomy were to take a knife and unintentionally slit the patient's throat, a non-expert jury could find such conduct to be negligence without the aid of expert testimony to that effect." *Caldwell v. Knight,* supra at 751, 752.

Thus, we turn to the question of whether the instant case is within the general rule or is instead one of those exceedingly rare cases wherein the medical questions presented concern matters which a jury can be credited with knowing by reason of common knowledge or the possibility of actionable medical negligence appears so clearly from the record that the plaintiff-patient need not produce expert medical testimony concerning the applicable standard of care to avoid summary judgment for a defendant-doctor testifying as to his own lack of negligence.

The relevant facts in making this determination are as follows:

Appellant visited the office of appellee, complaining of pain "from a pulled muscle in [her] shoulder." Immediately after appellee injected two needles in appellant's upper back in treatment of the muscular problem, for the first time, appellant developed a problem in her chest when she "began experiencing extreme pain and breathing difficulties . . . [so that she] almost fainted right after [appellee] performed the injection." The following day appellant was diagnosed as having a punctured and collapsed lung and was required to obtain treatment for this condition at a hospital.

While appellee, in an answer to appellant's interrogatories, denied that he punctured appellant's lung during the course of the treatment administered by him, the affidavit of appellant's expert, Dr. Johnson, stated that the only apparent cause of appellant's punctured lung was the injections that she had received from appellee. Appellee's denial of causation was thus directly controverted by appellant's evidence, and a jury question was clearly presented concerning whether or not appellee's administration of the injections was the cause of appellant's punctured lung. Compare *Ridge v. Espinoza,* 160 Ga. App. 678 (288 SE2d 56) (1981). Additionally, appellee did not assert that, in his medical opinion, a puncture to the lung, an internal organ, is a "possible and known risk of the procedure" of receiving the prescribed subcutaneous injections that he administered in appellant's upper back presumptively for the relief of muscular pain in her shoulder. *Lindsey v. Central Anesthesia Assoc., P.C.,* 161 Ga. App. 214, 215 (288 SE2d 292) (1982). See also *Jackson v. Tucker,* supra at 694. Nor did appellee give "an explanation for the presence of [the puncture in appellant's lung]" or otherwise state that, in his medical opinion, the puncture was already present in appellant's lung when she visited appellee. *Terrell v. West Paces Ferry Hospital,* supra at 784. Perhaps most importantly, the instant case involves a medical situation wherein, as in *Caldwell v. Knight,* supra, the appellant is not alleging negligence in the diagnosis or the method of treatment, but negligence in the *performance* of that treatment. It is widely known and generally understood by laymen that subcutaneous injections ostensibly given only for the relief of muscular pain should not, if administered correctly, result in the puncture of internal organs. Compare *Washington v. City of Columbus,* 136 Ga. App. 682, 690 (222 SE2d 583) (1975). As stated in Evans v. Roberts, 154 NW 923, 925 (Iowa 1915), it appears on the record before us in the instant case that it "is a matter of common knowledge and observation that such things do not ordinarily attend the service of one possessing ordinary skill and experience in the delicate work of [medical procedures]. It does not need scientific knowledge or training to understand that, ordinarily

speaking, such results are unnecessary, and are not to be anticipated if reasonable care can be exercised by the operator. When they do happen, then proof of other facts and circumstances having any fair tendency to sustain the charge of negligence will be sufficient to take the question to the jury . . ."

By ruling as we do in the case at bar, we do not seek to establish an inflexible rule that whenever a physician unintentionally injures an "undiseased organ" or other part of the body during the course of performing any method of treatment or surgery, the plaintiff-patient need not present expert testimony concerning the applicable standard of care to avoid summary judgment after the de-fendant-doctor submits expert testimony. We do not perceive our holding to be an extension of the long standing rules regarding medical malpractice. We merely hold, as have other courts, that from the evidence now of record, the instant case appears to come within the limited "pronounced results" exception to the general rule regarding the requirement of medical testimony in a malpractice case. See Stickleman v. Synhorst, 52 NW2d 504 (Iowa 1952), where-in the defendant-physician, in an attempt to inject oil in plaintiff-patient's trachea, unintentionally missed the trachea with the hypodermic needle and pierced the plaintiff's throat. In that case, it was held that, although no expert evidence was submitted to establish the standard of care in injecting a needle into the trachea, the actual treatment so clearly lacked care that a prima facie case of malpractice was established.

Appellee, as movant for summary judgment in the instant case, had the burden of proving his lack of negligence in puncturing appellant's lung by administering injections designed to relieve muscular pain. Under the present state of the record, appellee's actionable negligence is not negated, as a matter of law, by what is in essence his own opinion that he did not negligently puncture appellant's lung, an internal organ, when he gave her shots in her back to relieve muscular pain in her shoulder. Nothing else appearing on the record before us with regard to the specifics of appellee's prescribed medical treatment of appellant, expert testimony would not have been necessary to establish a prima facie case of medical malpractice and submission of the case to a jury would not have been unauthorized. The trial court therefore erred in granting summary judgment to appellee.

*Judgment reversed. Deen, P. J., and Banke, J., concur. Deen, P. J., also concurs specially.*

DECIDED JULY 15, 1983 —
REHEARING DENIED JULY 29, 1983 — 

*William C. Head,* for appellant.
*Gary B. Blasingame, David E. Barrett,* for appellee.

DEEN, Presiding Judge, concurring specially.

While I concur fully with the majority opinion, it should be added that what originally appeared to be a minor muscle shoulder pain when the patient entered the office could ultimately be determined by a jury to have been a punctured or collapsed lung ab initio. In other words, there might have been a collapsed lung preceding the subcutaneous injections of two syringes. Whether or not the injections caused the puncture or collapsed lung is an issue to be determined by the jury.

In reaching a verdict on the law and the evidence, the jury may use the general knowledge and experience which they possess in common with the rest of mankind. See *Hilburn v. Hilburn,* 163 Ga. 23 (3) (135 SE 427) (1926). In obscenity cases they can determine what community standards are even in the absence of expert testimony. In professional malpractice cases the court and jury must have expert testimony within the field of expertise regarding the standards so that the acts of the professional may be measured in determining exercise of reasonable due care and skill.

The general rule in medical malpractice cases remains that a plaintiff must produce some expert medical testimony of medical standards, and that defendant did not meet these standards in order to get a case to the jury; the common knowledge doctrine in malpractice cases is an evidentiary device rarely and narrowly utilized by the courts to remove that necessity of expert medical testimony so that the jury can again utilize their common knowledge as they generally do in non-malpractice cases. The courts rationalize that some case situations even in malpractice claims are so plain and palpable that the common knowledge and experience of the jury form a sufficient basis for the jury to determine the reasonableness of the defendant's act.

The common knowledge doctrine merely allows submission of the case to the jury (and would authorize a verdict for the plaintiff). The jury, of course, could still resolve the question in favor of the defendant by considering the presumption of due care in his favor as well as other evidence submitted.

The common knowledge doctrine is closely related to that of res ipsa loquitur. The common knowledge doctrine usually involves a known act, e.g., while stitching up a patient's cheek a physician pierces his eye with the needle, while res ipsa often is applied where it

is unclear what the actual alleged negligent act was (but the injury is such that it (1) does not ordinarily occur in the absence of negligence, (2) is caused by agency within exclusive control of defendant, and (3) is not due to voluntary action of plaintiff). But that is certainly not an absolute distinction. One evidentiary difference is that, while the common knowledge doctrine results in the submission of the case to the jury, successful invocation of res ipsa not only gets the case to the jury but shifts the burden of persuasion to the defendant, requiring some explanation that the injury did not result from his negligence. Res ipsa thus would be of greater benefit to a plaintiff in a medical malpractice case. The latter evidentiary device has been sparingly used in Georgia but can require expert testimony to lay the foundation of probability that the injury is attributable to negligence. The reluctance of our courts to use this rule seems to be a fear of weakening of the finding of fault based theory of malpractice plus destruction of the presumption of due care of the professional. A key question is whether presumptions are negated when opposing inferences are advanced during the trial, or that presumptions only ultimately vanish in the jury room. Compare *Floyd v. Colonial Stores,* 121 Ga. App. 852 (176 SE2d 111) (1970), with *Templeton v. Kennesaw Life &c. Ins. Co.,* 216 Ga. 770, 773 (119 SE2d 549) (1961). The writer here, in the former cited case dissented, taking issue with the quote in the majority opinion that presumptions may be looked on as the bats of the law, flitting in the twilight, but disappearing in the sunshine of actual facts. Presumptions, in my opinion, only disappear when the jurors consider they vanish, not before. If I am correct on the non-disappearance during a jury trial of presumptions until the jury believes they have vanished, then a presumption of due care, skill and diligence of a professional would not disappear even if the res ipsa doctrine is used in malpractice cases, hence the latter rule could be used consistently with fault versus no-fault and without doing harm to presumptions.

Professor Eaton in his well written article, "Res Ipsa Loquitur and Medical Malpractice in Georgia: A Reassessment," 17 Ga. Law Rev. 33, 76 (1982), on this subject chides the court for paying lip service to, and our narrow use of, this available doctrine. "To put it more bluntly, medical defendants, as a class, are not deserving of any special dispensation from inferences of negligence that may be logically drawn from the circumstances. One suspects, but cannot prove, that underlying the judicial condemnation of res ipsa loquitur in malpractice cases is the instinct to provide just such protection." See *Allrid v. Emory University,* 166 Ga. App 130 (303 SE2d 486) (1983).

Both the common knowledge doctrine and res ipsa loquitur are

evidentiary devices that would allow a case to go before the jury without the expert testimony when sanctioned by the court. Common knowledge is evidence of a fact to be found by the jury, while judicial notice on the other hand *establishes* a fact.

Judicial notice is a rule of evidence, and when a court takes judicial notice of some matter, that fact is established. It is usually stated that the court may, among other things, take judicial cognizance of matters of common knowledge and common experience among men. See *Batson-Cook Co. v. Shipley,* 134 Ga. App. 210 (214 SE2d 176) (1975). However, "[c]ourts should never take judicial cognizance of anything that is subject to be disproved." *Irwin v. Torbert,* 204 Ga. 111, 125 (49 SE2d 70) (1948). In the latter case, a negligence action seeking damages for a death resulting from a fire in a hotel, the Supreme Court refused to take judicial notice that a vast majority of the hotels in the country at the time of the fire did not have fire doors, sprinkler systems, or fire alarm systems.

When courts notice certain matters of common knowledge, it is applied by instructing the jury to find facts of which he has judicial notice.

The case of *Akridge v. Noble,* 114 Ga. 949 (41 SE 78) (1902) involves leaving a sponge in the body after the wound was closed. The plaintiff had expert testimony in that case. This case deals with charges given to the jury. It is a holding that due skill is required from when the opening is made in the body until the opening is closed properly and all operational appliances have been removed. I do not read this case as necessarily requiring expert testimony, therefore, I do not believe our holding in the subject case is necessarily inconsistent with what was held in *Noble,* supra.