71618, 71619. CHEROKEE COUNTY HOSPITAL AUTHORITY
v. BEAVER et al. (two cases).

(345 SE2d 904)

CARLEY, Judge.

Experiencing pain in her "lower back, around beside [her] kidney" and in her side, appellee Mrs. Beaver telephoned her physician. She was instructed to go to appellant R. T. Jones Memorial Hospital (Hospital). Upon her arrival, Mrs. Beaver received an injection of pain medicine that had been prescribed by her physician. A nurse employed by the Hospital administered the injection in Mrs. Beaver's right buttock. Immediately upon receiving the injection, Mrs. Beaver experienced intense pain radiating down her right leg. The pain was followed by limpness.

In Case No. 71618, Mrs. Beaver sued the Hospital for unspecified personal injuries allegedly resulting from the negligent administration of the injection. In Case No. 71619, Mr. Beaver sued the Hospital for loss of consortium due to his wife's unspecified injury. In each lawsuit it was alleged that "in the administration of said injection . . . the [Hospital], its employees and agents failed to exercise the proper and required standard of care and said failure constitutes negligence." Neither complaint contained specific averments as to *how* the injection had been negligently administered. After discovery, the Hospital moved for summary judgment in both cases. The trial court denied the motion, relying in part on *Killingsworth v. Poon*, 167 Ga. App. 653 (307 SE2d 123) (1983). However, the trial court certified the order for immediate review. The Hospital's application for an interlocutory appeal from the denial of its motion for summary judgment was granted. The Hospital's two appeals are consolidated for purposes of resolution in this single opinion.

1. In a medical malpractice action, "there are three essential elements imposing liability upon which recovery is bottomed: (1) the duty inherent in the [medical professional]-patient relationship; (2) the breach of that duty by failing to exercise the requisite degree of

skill and care; and (3) that this failure to be the proximate cause of the injury sustained." *Hawkins v. Greenberg*, 166 Ga. App. 574, 575 (304 SE2d 922) (1983). With regard to the second essential element, a plaintiff in medical malpractice cases is generally required to produce expert testimony in order to show that the defendant deviated from the requisite standard of care. The "pronounced results" exception to this general evidentiary rule requiring the plaintiff to produce expert testimony was recognized in *Caldwell v. Knight*, 92 Ga. App. 747 (89 SE2d 900) (1955) and was applied in the context of summary judgment in *Killingsworth v. Poon*, supra. The "pronounced results" exception is a very narrow one. It encompasses only "those exceedingly rare cases wherein the medical questions presented concern matters which a jury can be credited with knowing by reason of common knowledge or [wherein] the possibility of actionable medical negligence appears so clearly from the record that the plaintiff-patient need not produce expert medical testimony concerning the applicable standard of care to avoid summary judgment for a defendant [in a medical malpractice action who has produced expert medical testimony] as to his own lack of negligence." *Killingsworth v. Poon*, supra at 656. See *McClure v. Clayton County Hosp. Auth.*, 176 Ga. App. 414, 416 (336 SE2d 268) (1985); *Landers v. Ga. Baptist Medical Center*, 175 Ga. App. 500 (333 SE2d 884) (1985). The Hospital enumerates as error the trial court's holding that this limited "pronounced results" exception would be applicable in the instant case.

Application of the "pronounced results" exception must be based upon evidence of "such 'pronounced results' [as are] indicative of possibly negligent medical treatment[, examples of which] include those evinced when a doctor, while stitching a wound on his patient's cheek, by an awkward move, thrusts his needle into the patient's left eye, or where a leg or limb which has been broken is shorter than the other after treatment. [Cits.]" *Killingsworth v. Poon*, supra at 655. In addition to evidence of such "pronounced results" of medical treatment as a pierced eye or a shortened limb, "[i]t is widely known and generally understood by laymen that *subcutaneous injections* ostensibly given only for the relief of muscular pain should not, if administered correctly, result in the *puncture of internal organs.* [Cit.]" (Emphasis supplied.) *Killingsworth v. Poon*, supra at 657. In the instant case, however, there is no probative evidence whatsoever which would authorize a finding that Mrs. Beaver suffered any "result," pronounced or otherwise, attributable to her injection. The evidence is only that the injection was closely followed in time by the occurrence of pain and weakness in Mrs. Beaver's leg, which weakness continues. This evidence, standing alone, would not only be insufficient to authorize a finding that the injection was negligently administered, it would not even be sufficient to authorize an inference that the injection is a

proximate cause of the weakness in Mrs. Beaver's leg. See generally *Akins v. Fed. Mut. &c. Ins. Co.*, 108 Ga. App. 872 (134 SE2d 854) (1964). In *Killingsworth v. Poon*, supra, there was *additional* uncontroverted evidence that the patient, who had initially experienced pain upon injection, had in fact suffered a punctured lung and that the injection had caused that condition. In contrast, there is in the instant case no probative evidence as to the medical cause of the continuing weakness in Mrs. Beaver's leg and no evidence that the injection was a contributing factor therein. Under the record before us, the unexplained weakness in Mrs. Beaver's leg is merely a physical symptom which may in fact be a manifestation of the pre-existing condition which forced her to seek emergency treatment in the first instance, rather than an indication of an unexpected result of the medical treatment that she received at the Hospital. Compare also *Caldwell v. Knight*, supra (medical evidence that plaintiff suffered trauma to his back attributable to an injury rather than to disease).

"Generally, . . . the doctrine of res ipsa loquitur does not apply to medical professional cases. [Cits.]" *Hill v. Hosp. Auth. of Clarke County*, 137 Ga. App. 633, 641 (224 SE2d 739) (1976). If the "pronounced results" exception were applicable under such facts as exist in the instant case, the consequence would be that, notwithstanding an uncontroverted medical opinion as to the absence of negligence, every malpractice case could go to the jury merely by the plaintiff showing that he sought medical treatment and that his physical condition thereafter worsened rather than improved. This would be contrary to the "well settled principle of negligence law that the occurrence of an unfortunate event is not sufficient to authorize an inference of negligence. [Cit.]" *Franklin v. Elmer*, 174 Ga. App. 839, 842 (332 SE2d 314) (1985). The trial court erred in ruling that evidence merely that Mrs. Beaver experienced pain and an unexplained weakness in her leg at the time she received an injection is sufficient to warrant application of the narrow "pronounced results" exception. The law recognizes that "the fact that the treatment has resulted unfavorably does not raise even a presumption of want of proper care, skill or diligence. [Cits.]" *Sullivan v. Henry*, 160 Ga. App. 791, 800 (287 SE2d 652) (1982).

2. Our holding in Division 1 does not necessarily mandate reversal of the trial court's order. The inapplicability of the "pronounced results" exception means only that the instant case is governed by the rules that are otherwise generally applicable in the context of a malpractice case on summary judgment. See generally *Nelson v. Parrott*, 175 Ga. App. 307 (1) (333 SE2d 101) (1985).

The Hospital submitted the affidavits of two experts, both of whom based their statements on personal knowledge. One affiant was the nurse who had actually administered the injection. The other affi-

ant was the emergency room physician who had examined Mrs. Beaver at the Hospital after the injection. Both affiants expressed the opinion that the injection had been administered in compliance with the applicable standard of care. Neither affiant limited his or her averments merely to that conclusory expert opinion. Each affiant also stated the factual basis upon which the opinion of non-negligence was based: Both opinions were premised upon additional factual averments that the injection had been administered at a "proper" location on Mrs. Beaver's body. One affiant stated that "proper" location to be the "upper outer quadrant" of the right buttock. The other affiant also stated that the "proper" location of the injection had been the "upper . . . quadrant" of the right buttock.

In opposition, Mr. and Mrs. Beaver submitted the affidavit of a registered nurse who was qualified as an expert in the "giving [of] intramuscular injections in the buttock." This expert specifically stated what had been implicitly recognized in the affidavits of the Hospital's affiants, to wit: That "a failure to so place an intramuscular injection [in the upper outer quadrant of one of the buttocks] is a deviation from the proper standards of nursing care." The Beavers' affiant did not, however, express a further expert opinion that it would be a deviation from this standard to give an injection at the location on the buttock indicated by Mrs. Beaver as the specific site where she had been injected. With regard to this question of the actual site of the injection, Mrs. Beaver submitted her own affidavit. In that affidavit, she stated: "That the intramuscular injection was administered to me in the lower portion of my right buttock. Said injection was not administered in the upper outer quadrant of either my left or right buttock. . . . I saw the circle [that a physician who had examined the injection site] drew and it was in the lower portion of my right buttock." In addition, during the deposition of Ms. Beaver taken by the Hospital, she was asked to indicate where on her body the injection had been given. When she complied with this request, the Hospital's attorney described that location for the record as "the right outer lower quadrant."

Thus, implicit in the evidence of the Hospital's *own* experts is the proposition that the giving of an injection other than in the upper quadrants of the buttocks would be a deviation from the applicable standard of care. See generally *Lawrence v. Gardner*, 154 Ga. App. 722 (270 SE2d 9) (1980). That such is indeed the applicable standard is explicitly stated by the expert produced by Mr. and Mrs. Beaver. The Hospital's affiants further state that Mrs. Beaver was injected in the "proper" location. There is no testimony to the contrary given by an expert. Only Mrs. Beaver herself has testified that she was injected in the "lower" rather than the "upper" quadrant of the buttock. Therefore, the question for resolution is whether the existence of tes-

timony by experts that the injection was properly given in the "upper quadrant" of the buttock mandates the grant of summary judgment in favor of the Hospital, notwithstanding Mrs. Beaver's testimony that she was injected in the "lower portion" of her buttock.

There is a difference between expert testimony on the one hand and testimony that happens to be given by an expert on the other. See *Clanton v. Von Haam*, 177 Ga. App. 694, 695 (1) (340 SE2d 627) (1986). The requirement that expert testimony be adduced in a medical malpractice case is premised upon the existence in such a case of "medical questions" which control its resolution. See *Shea v. Phillips*, 213 Ga. 269, 271 (2) (98 SE2d 552) (1957); *Pilgrim v. Landham*, 63 Ga. App. 451 (11 SE2d 420) (1940). See also *Savannah Valley &c. Assn. v. Cheek*, 248 Ga. 745 (285 SE2d 689) (1982). " 'Medical questions' " may be defined as those "concerning highly specialized expert knowledge with respect to which a layman can have no knowledge at all, and the court and jury must be dependent on expert evidence." *Pilgrim v. Landham*, supra at 454. As discussed in Division 1, it is clear that the applicable standard of care in the administration of injections is certainly a "medical question" in the instant case. However, expert testimony in the instant case having established that it *would* be a deviation from that applicable objective standard of care to administer an injection other than in an "upper" quadrant of one of the buttocks (compare *Killingsworth v. Poon*, supra), there is no reason to believe that *only* experts would be further qualified to identify the actual external site of a specific injection as having been in the upper or lower quadrant of one of the buttocks. "Upper," "lower," "quadrant" and "buttock" are not words generally employed only by those with medical expertise and there is nothing in the record before us to indicate that those words convey any different concepts to medical experts than they do to laymen. To the contrary, the Hospital's own counsel indicated that the external site identified by Mrs. Beaver was "the right outer *lower* quadrant." (Emphasis supplied.) If counsel, as a medical layman, could so find, there appears to be no reason why a jury of non-medical experts could not be qualified to pass on the question.

Accordingly, the location of the external site of the injection is merely a question of fact in this malpractice case, not a "medical question" such as requires expert medical testimony. As to this question of fact, there is a conflict between the Hospital's witnesses, who happen to be experts, and Mrs. Beaver. Mrs. Beaver was certainly in a position to have personal knowledge of whether it was in the upper or lower portion of her own buttock that she was injected. The Hospital offered nothing in rebuttal of Mrs. Beaver's assertion that the site she identified as the location of her injection was in her lower and not her upper buttock. Resolution of this disputed factual issue is depen-

dent upon the credibility of the witnesses. On the record before us, it is for the jury to determine whether more credit is to be given to the Hospital's witnesses than to Mrs. Beaver. " 'Where a question of credibility arises as to a material issue, summary judgment should not be granted. [Cits.]' [Cits.]" *Ash v. Spear*, 137 Ga. App. 12, 13 (223 SE2d 26) (1975).

3. The Hospital further asserts that, even if a genuine issue of material fact remains regarding the commission of an act of malpractice, its motion for summary judgment should still have been granted. This contention is based upon the Beavers' failure to produce any expert testimony which shows that the injection is the proximate cause of the weakness in Mrs. Beaver's leg.

Uncontradicted expert opinion testimony will authorize the grant of summary judgment for the defendant in those cases "wherein [the] plaintiff is required to establish an essential element of his case by expert opinion testimony. . . ." *Savannah Valley &c. Assn. v. Cheek*, supra at 747. Thus, even in non-malpractice cases it has been held that, "[i]nasmuch as expert opinion testimony was essential to a determination of the causal factors in the . . . condition of plaintiff's leg, the expert testimony [produced by the defendant] was sufficient to support the grant of defendant's motion for summary judgment. [Cit.]" *Jordan v. United Ins. Co. of America*, 158 Ga. App. 520, 521 (281 SE2d 286) (1981) (action on insurance policy). See also *National Dairy Prods. Corp. v. Durham*, 115 Ga. App. 420 (154 SE2d 752) (1967). Even assuming that the general evidentiary requirement regarding the production of expert testimony does not extend to the issue of proximate cause in *every* medical malpractice case, whether the act of giving an injection in a certain portion of the buttocks can cause an internal injury manifested externally by weakness of the leg would appear to be a medical question requiring expert testimony. "[I]t is not one of those matters which jurors must be credited with knowing by reason of common knowledge. . . ." *Pilgrim v. Landham*, supra at 454. Compare *Jester v. State*, 250 Ga. 119-120 (1) (296 SE2d 555) (1982) ("that a stab wound penetrating entirely through the heart causes death, is not a matter . . . which should even require expert testimony.") In the instant case, there is no expert testimony from which it could be inferred that the giving of an injection other than in the upper quadrant of one of the buttocks is an act of medical malpractice *because* a possible physical consequence is an internal injury such as is characterized externally by weakness in the leg. See generally *McClure v. Clayton County Hosp. Auth.*, supra; *Stewart v. Palmyra Park Hosp.*, 171 Ga. App. 477 (320 SE2d 262) (1984). Compare *Messex v. Lynch*, 255 Ga. 208 (336 SE2d 755) (1985); *Killingsworth v. Poon*, supra (medical evidence that the only apparent cause of the plaintiff's punctured lung was the injection); *Caldwell v.*

*Knight,* supra (medical evidence of trauma attributable to injury rather than disease). Compare also *Self v. Executive Committee of Ga. Baptist Convention,* 245 Ga. 548 (266 SE2d 168) (1980) (a simple negligence case, wherein proof that an injury is the proximate result of medical *malpractice* is not an essential element of the plaintiff's case and wherein the question of whether a blow to the head can cause death would not appear to be a "medical question" *requiring* expert testimony).

However, the non-moving party on summary judgment is required to produce contrary evidence only if the movant has satisfied his initial burden of proof. As noted previously, one of the Hospital's affiants was the physician who examined Mrs. Beaver after the injection. His affidavit was based, in part, on his own personal knowledge derived from his examination of Mrs. Beaver. Thus, the affiant was qualified to give a probative expert medical opinion as to the cause of the weakness in Mrs. Beaver's leg. See *Jernigan v. Carmichael,* 145 Ga. App. 560, 562-563 (4) (244 SE2d 92) (1978). The affiant did not, however, eliminate the injection as the cause of the physical condition exhibited by Mrs. Beaver. The extent of his opinion was that the injection had been administered at the "proper" location (in the "upper" buttock) and, thus, had been given in a non-negligent manner. As discussed in Division 2, a fact finder could determine that the location of Mrs. Beaver's injection was not in the "upper" buttock but in the "lower" buttock. Thus, the hospital's affiant did not express an opinion that, even if the placement of the injection had not been in the "proper" location, the weakness in Mrs. Beaver's leg was nonetheless attributable to causal factors other than the injection. Compare *Stewart v. Palmyra Park Hosp.,* supra; *McClure v. Clayton County Hosp. Auth.,* supra at 418 (4); *Kirby v. Spivey,* 167 Ga. App. 751, 755 (3) (307 SE2d 538) (1983). Since the Hospital's expert medical evidence was not sufficient to eliminate the injection as a cause of Mrs. Beaver's physical condition, it was not incumbent upon her or her husband, as the non-moving parties, to produce expert testimony showing " 'that the injury complained of proximately resulted from . . . want of care or skill' " in the administration of the injection. *Hawkins v. Greenberg,* supra at 575.

4. On the record before us, the Hospital was not entitled to summary judgment in its favor based upon the elimination of either medical negligence vel non or proximate cause as jury issues.

*Judgments affirmed. McMurray, P. J., and Pope, J., concur.*

DECIDED MAY 23, 1986.

*Judson Graves, Paul J. Quiner,* for appellant.

*Michael J. Kramer*, for appellees.