No. 73.—FIELDER, BROTHERS & Co. plaintiffs in error, *vs.* WILLIAM E. COLLIER, defendant in error.

[1.] A witness speaking of a contract which he heard between the plaintiff and defendant, testified thus : " It was my understanding, and I believe it was that of all the persons interested, that if there should be any balance against any of the parties shipping, it should be promptly paid, after receiving the account : " *Held,* that the evidence was admissible.

[2.] W. E. C. shipped 57 bales of cotton to F. B. & Co. Liverpool, and received as an advance thereon, $1453.81.   The net proceeds of the cotton was $1066.48.   In an action to recover the balance of $387.33 :   *Held,* that the book-keeper and account of sales clerk, were competent witnesses to testify from the entries and memoranda made by them, respectively, as to the amount of sales, expenses, &c.; and that it was not necessary to go

behind the books and examine the weigher, wharfinger, broker and other employees who transacted the business.

[3.] A transcript from merchants' books, made out and produced in Court. under notice, in compliance with the 59th Common Law Rule of Practice, and inspected by the party giving the notice, should be allowed to go to the Jury as evidence in the cause.

[4.] Leave to amend the bill of particulars, so as to simplify the same, should be allowed on the appeal trial.

Assumpsit, in Lee Superior Court. Tried before Judge PERKINS, April Term, 1853.

William E. Collier shipped 57 bales of cotton, through J. Day & Co. commission merchants at Apalachicola, Florida, to the house of Fielder, Brothers & Co. Liverpool, England, and received as an advance thereon, in money, drafts, interest, postage &c. the sum of $1453.81 cts. The cotton was sold in Liverpool by Fielder, Brothers & Co. for the net amount of $1066.48 cts. This action was brought for the recovery of the difference, to wit: $387.33 cts. The defendant pleaded the general issue.

On the trial, the plaintiffs proved the shipment of the cotton. Plaintiffs offered in evidence, the depositions of Daniel J. Day, one of the firm of J. Day & Co. the agents of plaintiffs—and the answer to the fifth direct interrogatory, was objected to by counsel for defendants, because the witness stated therein, " that it was my understanding, and I believe it was that of all the parties interested, that if there should be any balance against any of the parties shipping, it should be promptly paid, after receiving the account." The Court sustained the objection, and counsel for plaintiffs excepted.

Plaintiffs offered in evidence the depositions of Edward Hogland and John Clancy, to prove the sale of the cotton, the expenses incident to the transportation and sale thereof, &c.

Counsel for defendant objected, because the witnesses stated " that they derived their information relative to the mat-

ters about which they testified, from the books, documents, accounts and vouchers of plaintiffs."

The Court sustained the objection, and counsel for plaintiff excepted.

Plaintiffs then offered in evidence, a transcript from the books, verified by the affidavit of one of the plaintiffs, which transcript was called out by a notice from the defendant to plaintiffs, to produce their books of account, &c. and the same was inspected by defendant's counsel, to which defendant objected. The Court sustained the objection, and counsel for defendant excepted.

The plaintiff having closed his case, counsel for defendant moved the Court for a non-suit. The Court sustained the motion and awarded a non-suit; and upon the several exceptions taken in the progress of the trial, error has been assigned.

Lyon and Clark, for plaintiffs in error.

Vason and Morgan, for defendant in error.

*By the Court.*—Lumpkin, J. delivering the opinion.

[1.] The first error assigned, is the ruling out the testimony of Daniel J. Day, who swore, that "it was his *understanding,* and *he believed* that it was that of all the persons interested, that if there should be any balance against any of the parties shipping, it should be promptly paid, after receiving the account." We think the Court was wrong in excluding this evidence; and for the reasons assigned in *Moody and Wife vs. Davis,* 10 *Ga. R.* 403 *;* and *Franklin et al. vs. The Mayor and Council of the City of Macon,* 12 *Ga. R.* 257.

[2,] Plaintiffs offered in evidence the depositions of Edward Hogland and John Clancy, to prove the sale of the cotton, the expenses incurred, &c. And counsel for the defendant objected, because the witnesses stated, "that they derived their information relative to the matter about which they swore

from the books, documents, accounts and vouchers, of plaintiffs."

As this constitutes, not only the principal point in the cause, but is really a question of some magnitude, it is proper to bestow upon it, a careful consideration.

Edward Hogland was book-keeper, and John Clancy account sales clerk, of this large factorage and commission house in Liverpool. They both testify to the correctness of the account of sales and expenses upon the defendant's lot of cotton. Appended to their answer they swear, " that the expenses were reasonable, customary, necessary and just, at the time they were severally incurred ; that from the business they have performed for the plaintiffs, and from their intimate knowledge of their business, derived from long experience, they can state that they keep correct books ; that the expenses charged were paid, and that they are such expenses as are necessarily incidental to the sale of cotton in Liverpool ; that no sale can be effected without the payment of such expenses, and that the consignee is liable for, and must pay them."

Shall this proof be received, or shall the plaintiffs be compelled to go behind the books thus verified by the clerks who kept them, and resort to each of the sub-agents who participated in the transaction and sale of this produce ? Are not the entries thus made in the usual course of the business of this extensive trading establishment, and as a part of the proper employment of the witnesses who prove them, not only the best, but the only reliable evidence which it is practicable to procure ? We have no hesitation in holding, that propriety, justice and convenience, require it to be admitted. The weighers, wharfingers, and numerous subordinates who handled this cotton, keep no books. They report to the clerks who keep the books of the concern, and their functions are performed. It is not reasonable to suppose, that they can remember the multitude of transactions thus occurring every day. After the lapse of a very brief period, the clerks themselves could only call to mind what had been done, by referring to their entries and

memoranda.   How could these sub-agents  be expected to do so, without such means of  refreshing their memory ?

The actual salesmen in none of the great wholesale stores, keep the books.   They report to the clerks who stand at  the different desks, and  they make the  entries.    And yet, these books are always received to  prove the sale and  delivery of goods.   Any other rule would involve enormous  expense, as well as inconvenience, and would in the end be productive of no practical benefit.

But there are other principles involved in this investigation. The consignor himself selects the consignee.   The agency imposes diligence, skill and integrity.    One of the duties growing out of the relation is, that a fair and just account of  sales of the produce entrusted to his care, shall be rendered.   Now, ought not some degree of  credit to be given to the account thus furnished ?

Daniel J. Day testified, that the shipper agreed, that should there be any balance against him, that it should  be promptly paid on receiving  the account.    Is this contract any  thing more than what the law implies ?    Here the advance was $1453.81 ; the net  amount of sales was $1066.48, leaving an indebtedness of $387.33.    Ought not the account itself, when rendered, especially under the testimony of  Day, to have been allowed as *prima facie* evidence, at least, of  the defendant's liability ?

If I employ an agent  to manage a  mercantile  concern for me, would not the books of his dealings  be *prima facie* evidence for him, subject to be falsified, of  course, for unfairness or mistake ?

Are not the accounts of  executors, administrators, and  all other trustees and  agents, especially when returned under oath, *prima facie* evidence in their favor ?   Why should commission merchants' books, kept in  the usual course  of their business, and duly authenticated by the proper clerk or clerks, constitute an exception ?

To impose a different rule upon these establishments, whether at home or abroad, and to require them at all times within

Fielder and others *vs.* Collier.

the statutory period of limitations, to be prepared with original *aliunde* evidence, to prove the terms of sale of all the property consigned to them, ·each item of expense, &c. would trammel commerce, and amount to a denial of justice.

By the general law, advances by the factor to his principal, are considered as made upon the joint credit of the fund and the party. Primarily, the defendant is liable for the total advance ; and upon proof of that, the plaintiff has made out his case. And the account rendered serves to show how much the advance was reduced by the proceeds of the cotton sold. It is really, therefore, for the benefit of the defendant. It is proof for him, as far as it goes ; and he is not precluded from showing that he is entitled to additional credits. Why, then, impose such onerous obligations upon the plaintiff to prove it? If the defendant is dissatisfied with the account, it is his privilege to impeach it for fraud, or any other circumstance. For these reasons, we think the judgment upon this point should be reversed, and the evidence admitted.

[3.] If we are right in the view which we take of the books, namely, that they are the best evidence in the power of the plaintiff to produce, then it follows, of course, that the transcript from the books should have been admitted. It is made and returned in literal compliance with the 57th Common Law Rule of Practice of the Superior Courts. It was brought into Court under notice from the defendant, and *inspected by his counsel.* If he was not satisfied that the transcript contained all that related to the dealings between the parties, the course for him to pursue, is clearly indicated in the Rule.

During the trial, and before any testimony was submitted to the Jury, plaintiffs' counsel proposed to amend their bill of particulars, by simplifying the same, so as to prevent the Jury from being misled or confused by the account as filed. This application was refused by the Court, and error is assigned thereon.

[4.] From the past adjudications of this Court, there would seem to be but one limit to the doctrine of amendment, and that is, that no new or distinct cause of action be introduced.

None such certainly was proposed here, and we see no good reason why permission was not granted to make the amendment. The design was to facilitate the labors of the Jury, and to prevent them from being misled in relation to the account sued on.

Judgment reversed.