## ALEXANDER ECCLES & CO. v. STRACHAN SHIPPING CO.

District Court, S. D. Georgia, E. D. July 20, 1927.

1. **Evidence** ⬩355(1)—**Records and slips showing weight of cotton cargo received from ship at Manchester, England, held competent in suit against carrier for short delivery.**

Records in the stock ledger of a disinterested party, which received and weighed a cargo of cotton from a ship at Manchester, England, made at the time by members of its clerical force and slips made by a checker giving the weight of each bale, *held* competent evidence in suit by shipper against carrier for short delivery.

2. **Interest** ⬩28—**Interest on value of cargo not delivered is recoverable at rate prevailing at place of suit.**

Interest on value of cargo not delivered by carrier is recoverable at rate prevailing at place of suit.

In Admiralty. Suit by Alexander Eccles & Co. against the Strachan Shipping Company. Decree for libelant.

See, also, 21 F.(2d) 653.

Hartridge, Wright & Brennan, of Savannah, Ga., for libelant.

Adams & Adams, of Savannah, Ga., for libelee.

BARRETT, District Judge. Liability of respondent for the value of the 28 bales of cotton was decreed by this court November 20, 1924, based upon an opinion (21 F.[2d] 653) of January 9, 1924.

The questions now to be answered are: (1) What was the value of the cotton? (2) Should interest be allowed, and, if so, at what rate?

[1] There is no issue as to the time and place of the determination of value, i. e., at Manchester, England, on October 10, 1919, the place and time where and when delivery should have been made, and there is no issue as to the price per pound. Sharp issue is taken as to the establishment of the weight by legal evidence.

The 28 bales were portions of four units bearing distinguishing marks. There was no distinguishing mark or weight for each separate bale. The bill of lading acknowledged the aggregate weight of each unit, and this showed an average weight per bale of 513.57 pounds. If it were known that cotton neither lost nor gained weight in transit, this would surely be sufficient, but the evidence is that sometimes the cotton gains weight and sometimes loses weight. I am of the opinion that, in the absence of more definite evidence in contradiction, libelant could rest with this proof, especially as the result so nearly approximates the weight of the "standard" bale, 500 pounds.

Libelant has, however, undertaken to prove the weight of the cotton at Manchester, and, by deducting this from the bill of lading weight, ascertain the weight of the 28 bales. The result is an average weight per bale of 499.89 pounds, indicating that the cotton actually shipped gained in weight in transit. The handling of the cotton upon discharge at Manchester, as proven by an officer of the Manchester Ship Canal Company, was by such company, which has no interest in the cotton or in this suit, and the method was as follows:

"Each bale weighed on discharge from ship. The weight ascertained entered on a ticket affixed to the bale by the checker who stands by the weigher whilst the operation of weighing is carried out and checks the weight. The weights as recorded on these tickets are entered on weight slips by the checker actually performing the operation of delivery from quay sheds, and from these weight slips the total weight of each mark is entered in the stock ledger."

The records in the stock ledger were made by "various members of the clerical staff, all of whom have been personally known to me and some of whom are still in the service of the company, but others have left the service, and I do not know present residence. Two at least are deceased."

"The weight books or slips referred to are in existence, and they are signed by the checker making the delivery. Some of these checkers are working on the docks, and their residences can be obtained. Others have left the company's service."

Copies from the stock ledger and of the weight slips were introduced. All of those who weighed the cotton as discharged, or made the entries on the books or slips, were not examined. Some were not available but it was not proven that some not examined could not have been located and examined. It was not shown that either the original weigher or original checker had any record of the weight except the "ticket affixed to the bale," or that the weigher could know that he had weighed any particular bale or that the checker could know that any bale was the identical bale to which he had affixed his ticket.

1. The copies were properly admissible (having been proven to be such and respondent admitting that it is not necessary to produce the original books).

This precise question was decided by the

Circuit Court of Appeals of the Fourth Circuit in 1924, in the case of E. J. Du Pont De Nemours & Co. v. Tomlinson (C. C. A.) 296 F. 634, citing many authorities. The principle was declared by the Georgia Supreme Court as early as 1853 in Fielder et al. v. Collier, 13 Ga. 496. Wigmore on Evidence (2d Ed.) § 1530, The Spica (C. C. A.) 289 F. 436, Straus v. Victor Talking Machine Co. (C. C. A.) 297 F. 791, J. Aron & Co. v. U. S. (C. C. A.) 18 F.(2d) 115, and other cases are to the same effect, and are satisfying in their reasoning.

Such is the rule in all branches of civil law and in criminal law. If there were doubt as to its applicability here, it should not be forgotten that the rules of evidence are not so strict in admiralty as elsewhere. Benedict on Admiralty (5th Ed.) par. 381; Pennsylvania R. Co. v. Downer Towing Corp. (C. C. A.) 11 F.(2d) 467; The Spica, supra.

To paraphrase from Straus v. Victor Talking Machine Co. (C. C. A.) 297 F. 805:

"To apply in this case the old-time rule of requiring testimony by the" original weigher or entrant "would amount to a denial of justice."

[2] 2. The question of interest is answered conclusively as to this court by the decision of the Circuit Court of Appeals of the Fifth Circuit in The Elvaston, 279 F. 935–940, that interest should be allowed at 7 per cent. per annum.

Let a decree be entered for $6,062.18, with interest at 7 per cent. per annum from October 10, 1919.