## 65592. ROSE et al. v. ROLLINS et al.

CARLEY, Judge.
Appellant Rose instituted the instant legal malpractice action against appellee Rollins, the attorney who had handled the closing of certain real property which was to be sold and financed by them. The damages alleged were the result of the subsequent default of the purchasers of the real estate.

It appears that the original closing scheduled for March 27, 1980, was delayed because the purchasers were unable to tender the $3,000 cash down payment required by special stipulation 10 of the sales contract. A new closing date of May 8, 1980, was set, the funds of appellants were deposited in appellee's escrow account and appellee was to hold the signed deeds in escrow until closing. Appellants then moved out of state. The closing took place on May 8, 1980, as

scheduled and the escrow funds were disbursed and the deeds recorded. The purchasers had obtained the down payment through an arrangement with the real estate firm which had handled the sale, a firm in which appellee was an officer. The agreement was that the real estate firm would lend the purchasers the down payment and take a secondary security interest in the property. Appellants were informed that the closing had taken place but not of the financial arrangements underlying the purchasers' acquisition of the down payment.

A short time later, appellants discovered that the purchasers had allowed the fire insurance on the property to expire. They contacted appellee and learned for the first time how the purchasers' down payment problems had been overcome. Appellants requested that the transaction be repudiated but were informed by appellee that it was too late. After the purchasers defaulted on the mortgage payments, appellants retained appellee to collect the delinquent payments and, finally, to institute foreclosure proceedings.

Appellants subsequently brought the instant legal malpractice action against appellee and others, alleging, as against appellee, negligence in his handling of the closing in violation of special stipulation 10 of the sales contract. In his answer, appellee denied that he represented appellants in the closing, asserting that he was employed by the real estate company as the closing attorney. He also denied appellants' allegations of negligence. After discovery, appellee filed his own affidavit and moved for summary judgment. Appellants responded by filing their joint affidavit. On September 10, 1982, a hearing on the motion was held. Apparently the trial court extended the time for filing additional briefs. On September 15, 1982, appellants filed a supplemental brief, as well as an affidavit of their attorney.

In ruling on the motion, the trial court found that appellee's own affidavit was sufficient expert evidence to support his motion for summary judgment and that it was not pierced by appellants' own non-expert affidavit. The trial court further found that appellants had failed to respond with a sufficient expert counter-affidavit in a timely manner. Appellee was accordingly granted summary judgment and appellants appeal.

1. There is no record of the hearing and nothing in the record that would indicate that the trial court extended the time for the filing of affidavits, rather than merely for the filing of supplemental briefs. Thus, we can only assume that the trial court was correct in holding that the affidavit of appellants' expert was not timely filed. Under OCGA § 9-11-56 (Code Ann. § 81A-156), affidavits are required to be filed prior to the hearing. *Bailey v. Dunn,* 158 Ga. App.

347 (280 SE2d 388) (1981).

2. "[E]xcept in clear and palpable cases . . . expert testimony is necessary to establish the parameters of acceptable professional conduct, a significant deviation from which would constitute malpractice. [Cits.] The reason for this requirement is simply that a jury cannot rationally apply negligence principles to professional conduct absent evidence of what the competent lawyer would have done under similar circumstances, and the jury may not be permitted to speculate about what the 'professional custom' may be." *Hughes v. Malone,* 146 Ga. App. 341, 345 (247 SE2d 107) (1978). An attorney, as well as a physician, may make an affidavit as an expert in his own behalf. *Payne v. Golden,* 245 Ga. 784 (267 SE2d 211) (1980); *Parker v. Knight,* 245 Ga. 782 (267 SE2d 222) (1980); *Hughes v. Malone,* supra.

Appellee's affidavit in the instant case set forth a detailed summary of the underlying circumstances with regard to all services performed by him in connection with the closing. In addition, appellee specifically gave his own expert opinion that he had "performed all duties which a closing attorney is expected to do in his dealings with the [appellants]" and that he had "exercised all standards of care owed to the [appellants] in his duties as closing attorney in his relationship to [appellants]."

"Succinctly stated, it may be said that in a legal malpractice case, the presumption is that the legal services were performed in an ordinarily skillful manner. *This presumption remains with the attorney until the presumption is rebutted by expert legal testimony; otherwise, the grant of a summary judgment in favor of the attorney is proper.* Should this presumption be rebutted by expert legal testimony, there is presented for the jury a question of fact." (Emphasis supplied.) *Hughes v. Malone,* supra at 349. In *Cale v. Jones,* 162 Ga. App. 257 (290 SE2d 154) (1982), there was submitted, on behalf of the defendant-attorney, expert affidavits stating merely that the "attorney's conduct in representing the appellant afforded at least a reasonable degree of skill and care and did not evince any actionable want of care, skill and diligence." This court held that "[t]his expert testimony, buttressed by the presumption of care, skill and diligence that attaches to services rendered by an attorney, was not directly contradicted by affidavits offered by appellant . . ." *Cale v. Jones,* supra at 258. In view of the presumption that the legal services were performed in an ordinary skillful manner, together with the expert opinion of the attorney-appellee, appellants were required to produce an expert's affidavit. This they did not do.

It is likewise clear that the instant case does not involve "clear and palpable" negligence on the part of appellee. Appellee did not deliver the deed or disburse the funds without the required cash

payments required by special stipulation 10 of the sales contract. The stipulation referred to simply provided that the purchasers would pay $3,000 cash at the time of closing. The purchasers did pay $3,000. However, the purchasers obtained those funds by a separate loan. There was no provision in the sales contract prohibiting secondary financing. There is simply no "clear and palpable" negligence alleged in the instant case which would make unnecessary the production of expert testimony opposing appellee's affidavit that he complied with the requisite standard of care.

*Judgment affirmed. Shulman, C. J., Quillian, P. J., McMurray, P. J., Banke, Birdsong, Sognier and Pope, JJ., concur. Deen, P. J., dissents.*

DECIDED JULY 14, 1983.

*Cary D. Langston,* for appellants.
*Larry R. Byrd, B. Keith Rollins,* for appellees.

DEEN, Presiding Judge, dissenting.

I must respectfully dissent. The record indicates that appellee attorney was an officer in the real estate company which handled the sale of appellants' home, that he denies he ever represented the plaintiffs and claims he was employed by the real estate company as the closing attorney. The record further shows that the buyers never tendered the $3,000 cash downpayment as required by special stipulation 10. Instead, the real estate company took a secured interest in the property in lieu of a commission. In his answer to interrogatories, Rollins states that no downpayment funds were transmitted through his escrow account. The Roses contend that they were concerned from the outset of this seller-financed transaction about the ability of the purchasers to make a downpayment and had no intention of closing the sale without the required funds first being proffered by the purchasers and therefore had the cash downpayment stipulation placed in the sales contract. Thus, the downpayment was an assurance that the purchasers had the ability to complete the contract.

This set of facts constitutes a clear and palpable case of deviation from acceptable professional conduct and is sufficient to pierce the defendant's own expert affidavit. As it is well established "[i]f a deed to real estate is signed and delivered to a depositary as an escrow, or to a special agent, with authority to deliver it to the grantee only upon a certain condition, a delivery to such grantee without the happening of such condition would not be lawful." *Anderson v.*

*Goodwin,* 125 Ga. 663, 664 (9) (54 SE 679) (1906); *Mays v. Shields,* 117 Ga. 814 (45 SE 68) (1903). If, however, the grantor learns of the delivery or ratifies the delivery, he must take prompt action to recall the deed or be estopped from disputing the rights of innocent third persons. Here there was an admission by appellants that they received the note and deed to secure debt but did not take any further action on Rollins' advice that nothing could be done to rescind the transaction.

Expert testimony is usually required for a client or patient to overcome a presumption of proper performance and due care and to show negligence by an attorney, physician or surgeon. There is an exception to the general rule in a limited number of cases wherein negligence would appear so clear from the evidence, or well known and concerned matters which jurors would know by reason of common knowledge that expert testimony is not necessary. One example falling in the latter category involving medical malpractice is the case of *Killingsworth v. Poon,* 167 Ga. App. 653 (—— SE2d ——) (1983).

In my opinion, the case under consideration is an example of the exceptional case not requiring expert testimony in order to make it a jury question. It might well be found upon the trial of this case before a jury that the standards of care generally in the legal profession would be that obtaining $3,000 in secondary financing instead of collecting of $3,000 cash at the time of the closing from the purchasers does not constitute malpractice. On the other hand, a jury might find that a purchaser who could not come up with the downpayment would seriously jeopardize the sellers' position and that the attorney breached the fiduciary duty owed to the sellers when he authorized the additional financing arrangement and released the deeds from escrow. Under the majority's view, the sellers' property could have been conveyed to a pauper. What we cannot say is, at this stage, that as a matter of law, a clear stipulation in the sales contract may be accomplished by methods not authorized in the contract.

Accordingly, I would find a jury issue exists as to whether the attorney breached his fiduciary duty to appellants and would reverse the grant of summary judgment.