A91A1262. FINDLEY v. DAVIS et al.
(414 SE2d 317)

COOPER, Judge.
In August of 1984, John Clayton Davis ("Davis") entered into a contract with appellant's mother ("Mrs. Findley") whereby Davis would represent Mrs. Findley as legal counsel in connection with the sale of her property once known as Broadview Plaza in Atlanta. The contract provided that Davis' fee would be eight percent of the sales price unless Davis had to re-activate his real estate license, in which

case the fee would be ten percent. The contract was witnessed and signed by appellant. On March 27, 1985, Mrs. Findley died and appellant became the executor of her estate. The following month, on April 9, 1985, the property was sold for $1,250,000, and Davis collected a fee of eight percent, $100,000. Davis was also retained to handle Mrs. Findley's estate and was paid a fee of five percent of the estate.

In February of 1986, Davis entered into a contract with appellant for legal services in connection with the sale of Lakeview Mobile Home Park which also provided an eight percent fee if Davis could perform the contract in his capacity as an attorney or ten percent if the re-activation of Davis' broker's license was necessary. The property was sold for $560,000, and Davis' fee was $51,000, slightly over nine percent of the sales price. Davis explained in deposition testimony that his fee exceeded eight percent because it was calculated on an original sales price of $650,000, and the purchaser agreed to be responsible for broker fees in exchange for a reduction of the sales price. As indicated below, this particular factor is not contested by appellant.

Personal friendships developed between appellant and Davis and their families, and on May 23, 1987, appellant agreed to loan Davis $147,000 at an interest rate of six percent. Appellant engaged another attorney to prepare the loan agreement and to prepare his will. The parties contemplated that the loan would be used by Davis to pay off his mortgage, thereby allowing him to quit his job as a mechanic at Delta Air Lines and spend more time with his family and appellant. The agreement provided that in the event of Davis' death the loan would be forgiven. In his will, appellant made a general bequest to Davis of ten percent of the estate plus all of appellant's personal property, excluding certain bonds. The loan agreement also provided that if Davis' bequest were diminished, Davis' obligation to repay the loan would be extinguished.

Later, the relationship between appellant and Davis became strained, and Davis repaid the loan in full with interest and renounced his interest in the will. Appellant retained the legal services of George Brown at a fee of ten percent, who referred the case to the present counsel of record. On December 15, 1989, an action was filed against Davis personally and against his professional corporation (hereinafter "appellees") wherein appellant alleged legal malpractice, fraud, breach of fiduciary duty and conflict of interest in connection with the two real estate transactions and the personal loan and sought an accounting for fees and expenses billed and paid by appellant. The trial court granted appellees' motion for summary judgment on all counts asserted in the complaint, and this appeal followed.

1. Appellant enumerates as error the trial court's determination that the affidavit of George Brown as an expert was insufficient as a

matter of law. In their motion for summary judgment, appellees argued that the affidavit failed to meet the requirements of OCGA § 9-11-9.1 (a) because George Brown was not "an expert competent to testify" based on Brown's previous representation of appellant in this matter and the fact that Brown had a financial interest in the outcome of this suit at the time he submitted his affidavit which he renounced immediately prior to the hearing on the motion for summary judgment. Appellees argue that the goal of OCGA § 9-11-9.1, to reduce the number of frivolous malpractice suits, would be thwarted if parties are allowed to rely on the affidavits of experts whose objectivity is tainted by personal interest in the litigation. This unsupported contention is without merit as we have recognized in an action for malpractice that "[a]n attorney, as well as a physician, may make an affidavit as an expert in his own behalf. [Cits.]" *Rose v. Rollins*, 167 Ga. App. 469, 471 (2) (306 SE2d 724) (1983). Appellees argued further that according to OCGA § 24-9-25 "[n]o attorney shall be competent . . . to testify for or against his client to any matter or thing, the knowledge of which he may have acquired from his client by virtue of his employment as attorney. . . ." "However, this statutory provision is for the benefit of [appellant] and cannot be invoked by [appellees]. ' "The rule that communications between an attorney and his client are privileged, and that the attorney is an incompetent witness to testify thereto, [cannot] be invoked for the benefit of other persons who are strangers to such relationship." (Cit.)' [Cit.]" *Cleary v. Burlington Indus.*, 193 Ga. App. 81 (387 SE2d 36) (1989). Since these grounds were the only issues raised with respect to the sufficiency of the affidavit before the trial court and we have determined that neither has merit, we conclude that the trial court erred in finding the affidavit insufficient as a matter of law inasmuch as the trial court did not state any other basis for its decision.

2. Appellant contends that genuine issues of material fact remain as to every ground asserted by appellees in their motion for summary judgment.

(a) Appellant argues that his claims arising from the fees paid to appellees from the Broadview sale and the administration of Mrs. Findley's estate were not time barred by the four-year statute of limitation applicable to malpractice actions (OCGA § 9-3-25). The Broadview sale closed, and appellees were paid on April 9, 1985, while the complaint was not filed until December 15, 1989. The final statement for services rendered in the handling of Mrs. Findley's estate was mailed on December 12, 1985. Appellant maintains that in the course of his confidential relationship with appellees, appellees concealed the unreasonableness of the fees charged, and such concealment constituted fraud which tolled the statute of limitation until appellant discovered the fees were excessive, which occurred immediately prior to

the filing of this action. " 'The fraud which will relieve the bar of the statute of limitation must be of that character which involves moral turpitude, and must have the effect of debarring or deterring the plaintiff from his action.' [Cit.] The only fraud that would toll the statute of limitation in the present action would be fraud actually preventing or deterring appellant from bringing suit for the appellees' alleged breach of duty in [charging excessive fees]. Appellant has not shown that [he] was prevented or deterred by any act of appellees from discovering the [reasonableness of the fees]. In fact, there is nothing in the record to indicate that appellant would not have discovered that fact at the time the documents were executed if he had chosen to [question the fees at that time or within the following four years]." *Frates v. Sutherland, Asbill & Brennan*, 164 Ga. App. 243, 245 (1) (296 SE2d 788) (1982). Moreover, there was no evidence cited in the record that appellees made any representations or assurances with regard to the reasonableness of the fees. Thus, appellant's contention is without merit, and we agree that appellant's claims with respect to the attorney fees from the Broadview sale and the handling of Mrs. Findley's estate were time barred.

(b) Appellant contends that the fees in connection with the Broadview and the Lakeview Mobile Home Park sales exceeded the value of services allegedly rendered and expenses allegedly incurred by appellees. Because the Broadview claim was time barred, it will not be considered here. With regard to the Lakeview sale, although appellant admits receiving a closing statement, he contends that the statement failed to demonstrate the hours spent and the services performed on his behalf; that an accounting should have been provided to him; and that the fees were unreasonable and excessive in violation of the Canon of Ethics of the State Bar of Georgia.

The record contains a "Contract for Legal Services and Sale of Property" wherein appellant employed appellees to provide representation for all purposes in connection with the Lakeview Mobile Home Park. The contract granted appellees the right to sell the property and recover out-of-pocket expenses and an eight percent commission of the sales price if the matter were handled by appellees in their legal capacity. In pertinent part, the contract states: "The total commission shall be due attorney provided said property is sold. . . ." Although the closing statement of this transaction does not appear in the record, the parties agree that the property sold for $560,000, and appellees were paid a fee based on legal services rendered. Appellant does not contend on appeal nor does the record demonstrate that appellees' services constituted illegal broker's services under OCGA § 43-40-1 (2). Compare *Starr v. Robinson*, 181 Ga. App. 9 (351 SE2d 238) (1986). Appellant concedes that he entered into the contract voluntarily; that he understood its provisions; that appellees committed

no fraud to induce him to agree to its terms; that he was never dissuaded from seeking alternate counsel for an opinion on the reasonableness of the fee; that he received the closing statement and never requested an accounting; and that he was satisfied with appellees' performance and the fee at the time of the sale. Appellant maintains, however, that he did not discover that the fee was excessive until he conferred with new counsel regarding the personal loan immediately prior to bringing this action.

It is not necessary to ascertain the value of appellees' services because the fee paid to appellees was based on the written contract, which the record demonstrates was executed according to its terms. *Drewry v. Robinson*, 142 Ga. App. 432, 433 (236 SE2d 108) (1977). "A contract between an attorney and client, where it is stipulated that the attorney shall receive a certain per centum of the amount recovered for services rendered, the same not being champertous, is valid and binding upon both the attorney and the client. [Cit.]" *Sellers v. City of Summerville*, 208 Ga. 361, 366 (67 SE2d 137) (1951). Appellees argue, relying on *Rasmussen v. Nodvin*, 174 Ga. App. 203 (329 SE2d 541) (1985) (50 percent contingency fee) and *Drewry*, supra (lot contingency fee to attorney for services rendered in sale of land), that because the record indisputably demonstrated that their contract for legal services was valid and binding, the eight percent contingency fee was reasonable as a matter of law; however, in both cases, while this court upheld both contingency fee agreements, we made no specific determinations that the fees were reasonable as a matter of law as we are requested to do in this case. In *Rasmussen*, the court held that the client's claim based on fraud, "negligent overcharging" and abuse of process and the client's request that the fee be reduced to a 33 1/3 contingency fee were properly dismissed by the trial court for failure to state a claim. OCGA § 9-11-12 (b) (6). *Rasmussen*, supra at 206.

In the instant case, appellant contends that appellees' conduct violated the Canon of Ethics of the State Bar. Appellees deny that any such violation occurred and argue, relying on *Roberts v. Langdale*, 185 Ga. App. 122 (363 SE2d 591) (1987), that even where such a violation is established, a cause of action is not thereby created. In *Roberts*, the court adopted the rule that " ' "[a]n alleged violation (of a rule of the Code of Professional Responsibility), *standing alone*, cannot serve as a legal basis to support plaintiff's civil action seeking money damages. . . ." [Cit.]' [Cit.]" Id. at 124. This principle, however, does not bar appellant's malpractice action. " ' "(I)t is the general rule in the majority of states that in a legal malpractice action, the client has the burden of establishing three elements: (1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff. (Cits.)"

[Cit.]' [Cit.]" Id. at 123. In our view, appellant has made such a showing. The Georgia Code of Professional Conduct in Standard 31 prohibits a lawyer from entering into an agreement for a "clearly excessive fee." The affidavit of George Brown, submitted with the complaint, alleges that appellees' collection of excessive fees from appellant deviated from "the required standard of skill, care and diligence normally possessed and utilized by other attorneys who represent clients in real estate . . . matters under the same or similar circumstances." Appellees received their commission on the sale of the Lakeview property after closing.

"[I]n reviewing the evidence on summary judgment in this case, we need only look to the pertinent presumption of law and the expert testimony offered by appellant with regard to appellant's allegations of malpractice against [appellees]. [Cit.] In this regard, we observe the following: ' "It is presumed that [appellees] performed legal services for [appellant] in an ordinarily skillful manner. [Cit.]" [Cit.]' [Cit.]" (Indention omitted.) Id. at 123. " '*This presumption remains with the attorney until the presumption is rebutted by expert legal testimony; otherwise, the grant of a summary judgment in favor of the attorney is proper.* Should this presumption be rebutted by expert legal testimony, there is presented for the jury a question of fact.' [Cit.]" (Emphasis in original.) *Rose v. Rollins*, supra at 471. Appellees failed to submit expert opinion to establish that their collection of the eight percent contingency fee in connection with the Lakeview sale was within the parameters of acceptable professional conduct exercised by attorneys generally under similar circumstances and to thereby buttress the presumption of care, skill and diligence. See *Rose*, supra at 471. Instead, appellees submitted their own affidavit which set forth merely their detailed account of the various transactions and legal services performed. In contrast, appellant produced expert testimony that appellees' collection of excessive fees deviated from the parameters of acceptable professional conduct normally exercised by attorneys representing clients in real estate under like and similar circumstances and therefore met his burden of producing rebuttal evidence demonstrating the existence of an issue for jury resolution. See *Graves v. Jones*, 184 Ga. App. 128 (1) (361 SE2d 19) (1987). Compare *Howard v. Walker*, 242 Ga. 406, 408 (249 SE2d 45) (1978); *Roberts*, supra at 124.

Hence, the trial court erred in granting summary judgment to appellees on the question of the reasonableness of the fees in connection with the Lakeview Mobile Home Park sale.

(c) Finally, appellant contends that the loan agreement placed appellees in a conflict of interest and that he was damaged by the lost interest he could have earned on the $147,000 loaned to appellee Davis. However, appellant acknowledges that the loan was repaid in full

with interest, and the record indicates that appellant agreed to an interest rate below the market rate because of their friendship and with the idea of helping Davis.

"It is well-established Georgia law that before an action for a tort will lie, the plaintiff must show he sustained injury or damage as a result of the negligent act or omission to act in some duty owed to him. [Cits.] Although nominal damages can be awarded where there has been an injury but the injury is small, [cit.] where there is no evidence of injury accompanying the tort, an essential element of the tort is lacking, thereby entitling the defendant to judgment in his favor. [Cit.]" *Whitehead v. Cuffie*, 185 Ga. App. 351, 353 (2) (364 SE2d 87) (1987). An action for legal malpractice cannot be maintained where there is no evidence that the breach of the professional duty proximately caused injury, loss or damage to the client. Id. The record demonstrates that appellant was completely repaid, and we conclude that any loss in interest suffered by appellant was voluntarily assumed and not attributable to appellees. Accordingly, the trial court did not err in granting summary judgment to appellees as to the loan agreement.

*Judgment reversed in part and affirmed in part. Birdsong, P. J., and Pope, J., concur.*

DECIDED DECEMBER 4, 1991 —
RECONSIDERATION DENIED DECEMBER 19, 1991 —

*Jones, Brown, Brennan & Eastwood, Taylor W. Jones, Rebecca A. Copeland,* for appellant.

*Troutman, Sanders, Lockerman & Ashmore, William N. Withrow, Jr., A. William Loeffler,* for appellees.