## A97A2081. SCHLUTER v. PERRIE, BUKER, STAGG & JONES, P.C.
(498 SE2d 543)

BEASLEY, Judge.

Perrie, Buker, Stagg & Jones, P.C., a law firm, sued its client John Schluter to recover unpaid attorney fees. Schluter complained the amount of work performed was excessive and in part unauthorized. The trial court granted the firm summary judgment. The issue is whether the evidence is undisputed that the work billed for fell within the parameters of the parties' agreement.

Schluter and Richard W. Jones, a principal in the firm, executed a letter agreement on the firm's letterhead authorizing Jones to prepare the documents necessary for a private placement offering of limited partnership interests in a new dining and entertainment club. It stated: "The legal work necessary for the proposed offering will entail the preparation of a private placement memorandum, preparation of subscription documents, preparation of appropriate regulatory filings, preparation of amendment of limited partnership agreement, partnership organization and cleanup work and other collateral work." Schluter agreed to pay invoices which would consist of expenses and fees calculated on an hourly basis for the services performed. The agreement set forth an hourly rate of $140 for Jones' time. It stated as "estimates" that the project would take about two weeks and that the fees would range from $12,000 to $18,000. The agreement explained that the estimates were based on Jones' experience in matters of the same nature, did not constitute any guarantee, and could be greater. Within four weeks Jones, with the assistance of a firm associate, prepared and delivered the documents to Schluter's son and business partner, Douglas Schluter, who had the documents copied and bound. The firm submitted invoices to Schluter which amounted to $17,579.50 in fees and $1,559.94 in expenses. Schluter refused to pay more than $10,203.85. The firm brought suit in two counts, open account/breach of contract and quantum meruit, and sought in addition attorney fees for bringing the suit. The court granted summary judgment on the open account/breach of contract claim.

1. "An action on open account is a simplified pleading procedure where a party can recover what he was justly and equitably entitled to without regard to a special agreement to pay such amount for goods or services as they were reasonably worth when there exists no dispute as to the amount due or the goods or services received. An action on open account may be brought for materials furnished and work performed. However, if there is a dispute as to assent to the services or to acceptance of the work done or as to what work was to be performed and the cost, then an action on open account is not a proper procedure. A suit on account must be based either on an

express or an implied contract."[1]

Schluter has challenged the firm's billings, which takes the case outside the simplified parameters of an action on open account. The firm's claim must proceed as a breach of contract action.

Schluter urges that factual disputes exist as to four matters. First, he claims the firm agreed to keep the fees and expenses in the low end of the range identified in the agreement. This contradicts the written agreement which provides Jones could not promise the fees would even stay within the estimated range. Similarly, Schluter's argument that the parties agreed the project would take no longer than two weeks is inconsistent with the written terms stating the two-week figure was only an estimate and the project might take longer.

But oral understandings cannot be admitted to contradict written terms.[2] "Well-established Georgia law provides that matters outside a contract cannot be used to vary or explain the unambiguous terms of an agreement. While, generally, an ambiguity in a contract may be explained by parol evidence, parol evidence is inadmissible to add to, take from or vary a written contract. (OCGA §§ 13-2-2 (1); 24-6-1; and 24-6-2.) Where the contract is complete on its face and the evidence offered to explain the ambiguity contradicts the terms of the written instrument, it should not be admitted. Moreover, parol evidence of a mere understanding arrived at subsequent to the contract as to the meaning of the prior writing is inadmissible."[3]

Second, Schluter claims the tax research and analysis exhibited in the documents "was neither necessary nor appropriate" and the extent of it was unauthorized. Schluter's personal testimony that the detailed tax analysis was excessive legal work is not competent evidence for the reason that he lacks a law degree. The law presumes that lawyers perform legal services in an ordinarily skillful manner.[4] "This presumption remains with the attorney until the presumption is rebutted by expert legal testimony; otherwise, the grant of a summary judgment in favor of the attorney is proper. Should this presumption be rebutted by expert legal testimony there is presented for the jury a question of fact."[5] *Findley v. Davis*[6] applied this presumption where the client claimed the fees exceeded the value of the ser-

---

[1] (Citations omitted.) *Watson v. Sierra Contracting Corp.*, 226 Ga. App. 21, 27 (b) (485 SE2d 563) (1997) (physical precedent).

[2] See *Loveless v. Sun Steel*, 206 Ga. App. 247, 248-249 (1) (424 SE2d 887) (1992).

[3] (Citations and punctuation omitted.) *Choice Hotels Intl. v. Ocmulgee Fields*, 222 Ga. App. 185, 186-187 (1) (474 SE2d 56) (1996).

[4] *Roberts v. Langdale*, 185 Ga. App. 122, 123 (1) (363 SE2d 591) (1987).

[5] *Hughes v. Malone*, 146 Ga. App. 341, 349 (247 SE2d 107) (1978); see *Findley v. Davis*, 202 Ga. App. 332, 337 (2) (b) (414 SE2d 317) (1991), rev'd on other grounds, 262 Ga. 612 (422 SE2d 859) (1992); *Rose v. Rollins*, 167 Ga. App. 469, 471 (2) (306 SE2d 724) (1983).

[6] 202 Ga. App. 332.

vices rendered and expenses incurred.

Aside from this presumption, Schluter's personal opinion does not provide a legal evidentiary basis for his defense that the legal tax work was inflated. To prove such requires the opinion of a legal expert in the field. The firm submitted the affidavit of Jones, who was qualified to give an opinion because he had practiced law for 14 years in connection with over 60 similar securities offerings. Because it was his opinion that the work was reasonable and necessary, Schluter's failure to present contrary competent testimony dissolved this defense.[7]

Schluter's other two allegations of factual dispute have merit. First, he testified that three meetings with "Mr. Schluter" appearing on the invoices did not take place, and as to two of them, he was out of town. In response, the firm on the day before the hearing filed an unsworn "affidavit" from Jones, who sought to explain that the invoiced meetings were with Schluter's son, Douglas Schluter. Because unsworn statements are not regarded as affidavits and do not constitute competent evidence to support a motion for summary judgment,[8] and because the document was filed later,[9] the trial court correctly struck and did not consider it. Moreover, two of the disputed billing entries on successive days each refer to a meeting with "Mr. Schluter," revision of a partnership agreement, conference call with "Mr. Schluter," meeting with "Douglas Schluter," and work on a memorandum. This would imply that there were two different meetings each day with two different individuals. Because Schluter testified he attended no such meetings, a disputed issue of fact exists.

Second, Schluter points to hours worked by "CVS," apparently an associate at the firm, and claims he never authorized the firm to allow anyone other that Jones to work on the matter. The agreement is ambiguous on this issue. It is on the firm's letterhead but is signed by Jones without any express designation that he is signing on behalf of the firm. The agreement refers to the billing policies of the firm but states "I will strive to complete the preparation of the documents necessary to effect your proposed offering as expeditiously as possible at a fair and reasonable cost to you." The agreement refers only to Jones' hourly rate. Ambiguities in agreements are construed against the drafter.[10] In light of Schluter's testimony that he did not intend to authorize anyone besides Jones to work on the matter, the fact is disputed. This obviates a need to determine whether evidence from

---

[7] See generally *Howard v. Walker*, 242 Ga. 406, 408 (249 SE2d 45) (1978); *Findley v. Davis*, supra, 202 Ga. App. at 337 (2) (b); *Graves v. Jones*, 184 Ga. App. 128, 129-130 (1) (361 SE2d 19) (1987).

[8] See *Huiet v. Schwob Mfg. Co.*, 196 Ga. 855, 859 (2) (27 SE2d 743) (1943); *Barrett v. Wharton*, 196 Ga. App. 688, 689 (396 SE2d 603) (1990).

[9] See *Corry v. Robinson*, 207 Ga. App. 167, 169-170 (2) (427 SE2d 507) (1993).

[10] *Gram Corp. v. Wilkinson*, 210 Ga. App. 680 (1) (437 SE2d 341) (1993).

"CVS" was necessary to prove the work attributed to her. Her affidavit was struck as being filed too late.

The disputed issues of fact precluded summary judgment on Count 1, and thus, the granting of it was error.

2. There is no ruling to review in connection with Schluter's enumeration as error the grant of summary judgment on Count 2, the quantum meruit claim. The firm moved for summary judgment only on Count 1, the claim on an account, and the trial court awarded summary judgment on that count alone.

*Judgment reversed. McMurray, P. J., concurs specially. Smith, J., concurs in the judgment only.*

MCMURRAY, Presiding Judge, concurring specially.

Although I concur in the Court's judgment reversing the trial court's judgment granting Perrie, Buker, Stagg & Jones, P.C.'s ("the firm") motion for summary judgment, I must write separately as I do not agree with my colleague's reasoning and the limited holding that genuine issues of material fact remain only as to (1) whether the firm improperly (without authority) charged John Schluter for work that was allegedly performed by an associate attorney, and (2) whether the firm overcharged John Schluter for three meetings with attorney Richard W. Jones. While I agree that respective questions of law and fact remain as to these issues, I would reverse the trial court's summary judgment in its entirety because the record reveals fatal probative defects (hearsay and double hearsay) in the firm's only proffer of damages — billing sheets and invoices attached to attorney Richard W. Jones' unimpeachable affidavit. These disputed materials do not prove, as a matter of law, any part of the firm's claim for past-due attorney fees under the attorney-client engagement letter (*attached hereinafter as an Appendix*) which attorney Richard W. Jones prepared and John Schluter executed. See *Bryan v. Fed. Express Corp.*, 180 Ga. App. 163, 164 (3) (348 SE2d 705).

1. *Proof of Damages on Summary Judgment.* As a plaintiff-movant on summary judgment for breach of contract damages, the firm must show that there remains no genuine issue of material fact as to the amount of John Schluter's alleged debt. See *Bryan v. Fed. Express Corp.*, 180 Ga. App. 163, 164 (3), supra. Attempting to meet this burden, the firm filed the affidavit of attorney Richard W. Jones, who deposed that he "was the billing attorney for [John] Schluter's account[; that he] was responsible for reviewing the time spent and costs [incurred in this matter, and that an] account was maintained for [John] Schluter. . . ." Attorney Jones also deposed that "all time and costs contained in [John Schluter's account] were reasonable and necessary [and that]" John Schluter's account balance is reflected in "invoices" attached to his affidavit. This exhibit includes billing sheets comprising lists of John Schluter's unpaid expenses and

vaguely annotated time entries reflecting time for work allegedly performed by attorney Jones and an associate attorney, who is identified in the firm's billing sheets as "CVS."

The problem with the firm's proffer is that, absent an opportunity for John Schluter to test the reporting attorneys' entries via cross-examination (*Southern Cellular Telecom v. Banks*, 209 Ga. App. 401, 402 (433 SE2d 606)), the entries are hearsay, "and hearsay, even when admitted into evidence without objection, lacks probative value to establish any fact. *Howell Mill/Collier Assoc. v. Pennypacker's*, 194 Ga. App. 169, 171 (2) (390 SE2d 257)." *Mitcham v. Blalock*, 214 Ga. App. 29, 31 (2), 32 (447 SE2d 83), cert. denied, 214 Ga. App. 906. Indeed, the value of cross-examining attorney Jones is punctuated in the case sub judice by an absence of proof regarding his personal knowledge of the work that was purportedly performed by associate attorney "CVS."[11] Also telling with regard to the billing sheets' probative shortage is John Schluter's opposing affidavit challenging three entries for meetings which (according to John Schluter) never occurred. While the firm attempts to explain away this proof (in its brief) by arguing that these time entries must have been for meetings with John Schluter's son, Douglas Schluter, the point remains that evidentiary confidence cannot be placed in such self-serving billing entries without, at the very least, an opportunity to cross-examine the reporting professionals.

Under these circumstances, and recognizing the unimpeachable nature of affidavits such as those proffered on summary judgment in the case sub judice, I cannot go along with my colleague's tacit recognition that most of the time entries in the firm's billing sheets constitute irrefutable proof of the work reported therein. Saying that any of these billing entries proves the performance of the matters reported therein ignores this Court's directive in *Southern Cellular Telecom v. Banks*, 209 Ga. App. 401, 402, supra, that vaguely annotated billing statements must be tested by cross-examination (or at least a proffer of cross-examination) before such entries constitute proof of the execution, function or substance of any task. See also *Southern Co. v. Hamburg*, 220 Ga. App. 834, 842 (5) (470 SE2d 467), cert. denied, 220 Ga. App. 914, and *Mitcham v. Blalock*, 214 Ga. App. 29, 31 (2), supra. Compare *Ins. Co. of North America v. Allgood Elec. Co.*, 229 Ga. App. 715 (494 SE2d 728), where a majority of this Court held that a client's activities with her attorneys before trial authenticated her per-

---

[11] This is so because hearsay evidence is defined as "that which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons." OCGA § 24-3-1 (a). And while this definition encompasses many classes of proof, it is fundamental that hearsay, such as that proffered in the firm's billing sheets, follows when a witness speaks to the truth of something outside the scope of his or her personal knowledge. Green, Ga. Law of Evidence (4th ed.), §§ 217, 226; 5 Wigmore, Evidence, § 1361 (Chadbourn rev. 1974).

sonal knowledge of work that was reportedly performed by these attorneys, as well as several other out-of-court declarants, in billing sheets that were admitted into evidence at trial.

2. *Georgia's Business Records Exception.* Because the case sub judice must be remanded for further proceedings in the trial court and because the firm appears to proffer its billing sheets under Georgia's Business Records Exception to the hearsay rule (OCGA § 24-3-14) by having attorney Jones depose that he "was the billing attorney for [John] Schluter's account" (*Peachtree North Apts. Co. v. Arkhora Assoc.*, 140 Ga. App. 20, 21 (2) (230 SE2d 83)), I find it necessary and appropriate to resolve confusion raised by *Santora v. American Combustion*, 225 Ga. App. 771, 774 (3), 775-776 (485 SE2d 34), and *N.D.T., Inc. v. Connor*, 196 Ga. App. 314, 315 (6), 316 (395 SE2d 901), regarding the admissibility of attorney billing sheets under this state's Business Records Exception to the hearsay rule. Compare *Oden v. Legacy Ford-Mercury, Inc.*, 222 Ga. App. 666, 669 (3) (476 SE2d 43).

"Georgia's Business Records Exception is not a rule subject to indifferent statutory application, but is a venerable exception ascending from principles of necessity and trustworthiness. *Fielder, Bros. & Co. v. Collier*, 13 Ga. 496, 499. See OCGA § 24-3-1's requirement that '(h)earsay evidence is admitted only in specified cases from necessity.' OCGA § 24-3-1 (b). Also see 5 Wigmore, Evidence §§ 1517-1561 (Chadbourn rev. 1974).

"In *Fielder*, a case involving proof of a volume of cotton shipped from Apalachicola, Florida, to Liverpool, England, Chief Justice Joseph H. Lumpkin (writing for the court) reasoned that a large factorage and commission house's shipping records, while hearsay, were nonetheless the best evidence of the transaction, when kept in the regular course of business, because it would have been impractical and unreasonable to expect '(t)he weighers, wharfingers, and numerous subordinates who handled this cotton (to recall) the multitude of transactions thus occurring every day.' Id. at 499. The court also reasoned that the fiduciary relationship between the shipping agent and the defendant rendered the shipping records trustworthy. Id. at 500." *Ins. Co. of North America v. Allgood Elec. Co.*, 229 Ga. App. 715, 722-723 (b), supra (dissenting opinion). I do not believe similar logic applies in the case sub judice.

Unlike the out-of-court declarants in *Fielder*, the firm's lawyers are neither disinterested recording agents nor clerks, "weighers," or "wharfingers." Attorney Jones and associate attorney "CVS" are but two lawyers who purportedly reported the discharge of professional services for John Schluter, but who now expect payment for those purported services without having to answer for their billings on cross-examination. While it may be inconvenient for attorney Jones and "CVS" to appear under oath for cross-examination, there is no

indication in the case sub judice that, like "the weighers, wharfingers, and numerous subordinates who handled . . . cotton" in the *Fielder* case, it would be "impractical and unreasonable" for these professionals to appear at trial and recall the services which they allegedly charged against John Schluter's account. Billings for professional services, at rates exceeding $100 per hour, simply do not compare to the type of work or "multitude of transactions" contemplated in *Fielder*. Moreover, unlike the fiduciary relationship in *Fielder* between neutral parties that rendered the shipping records in question trustworthy, the action in the case sub judice demonstrates that any remaining fiduciary relationship between the firm and John Schluter cannot lend credibility to the billing sheets which the firm now proffers in support of its motion for summary judgment. Under these circumstances, I find no reason of necessity which relieves the two lawyers in the case sub judice of their duty to answer, before a jury, for the specific billings which the firm now proffers in attorney Jones' affidavit. As set forth in the dissent in *Ins. Co. of North America v. Allgood Elec. Co.*, 229 Ga. App. 715, 723, supra, "I would adhere to the principle initially recognized in *Southern Cellular Telecom v. Banks*, 209 Ga. App. 401, 402, supra, that possible deficiencies, suppressions and sources of error which may lie within attorney billing records are tested best by confrontation and cross-examination. It thus appears elemental to me that recording legal services is not merely a matter of mechanical routine which, alone, establishes the indicia of reliability required for admission of records under Georgia's Business Records Exception. The recording of time and expenses by an opposing party's agent or legal representative, in my view, necessarily involves an account of judgment which, when embraced in a business memorandum, is not admissible under OCGA § 24-3-14. See *Wesley v. State*, 225 Ga. 22, 23 (2) (165 SE2d 719); *Knudsen v. Duffel-Freeman, Inc.*, 95 Ga. App. 872, 875 (2), 879-881 (99 SE2d 370). I, therefore, believe that Georgia's Business Records Statute, as suggested in *Santora v. American Combustion*, 225 Ga. App. 771, 774 (3), 775-776, supra, and *N.D.T., Inc. v. Connor*, 196 Ga. App. 314, 315 (6), 316, supra, must 'not go to the extent of rendering admissible self-serving memorandums of (the) kind [identified in the case sub judice in attorney Jones' affidavit]. *Young v. Landers*, 31 Ga. App. 59 (119 SE 464). A contrary ruling would render admissible files of correspondence and all kinds of writings if made by one in connection with the operation of a business.' *Maryfield Plantation v. Harris Gin Co.*, 116 Ga. App. 744, 747 (4) (159 SE2d 125)." *Ins. Co. of North America v. Allgood Elec. Co.*, 229 Ga. App. 715, 723, supra.

# APPENDIX.

### PERRIE, BUKER, STAGG & JONES, P.C.

Attorneys At Law

115 Perimeter Center Place, Suite 170
ATLANTA, GEORGIA 30346

Richard W. Jones

(404) 804-0500

FAX (404) 804-0509

March 17, 1993

Mr. John A. Schluter
Landmark Partners, L.P.
659 Peachtree Street, N.E.
Atlanta, Georgia 30308

Re:   Private Placement Memorandum

Dear John:

It is a pleasure for me to have the opportunity to work with you on the proposed offering of limited partnership interests in your new dining/entertainment club concept. I am a firm believer in establishing with clients at the outset a mutual understanding of the business details of the attorney/client relationship. Accordingly, I would like to take this opportunity to discuss the procedures and policies this firm follows in rendering professional services.

. I will strive to complete the preparation of the documents necessary to effect your proposed offering as expeditiously as possible at a fair and reasonable cost to you. My experience is that the normal time required to complete an offering of securities is usually about two weeks from start to finish, however, I understand that you are under significant time pressure to complete your offering as soon as possible. Accordingly, I will strive to complete your offering in an expedited time frame in order to accommodate your needs. I trust, however, that you will understand that if changes which you or others initiate or matters of timing over which I have little or no control cause delays, this time frame may be modified.

The legal work necessary for the proposed offering will entail the preparation of a private · placement memorandum, preparation of subscription documents, preparation of appropriate regulatory filings, preparation of amendment of limited partnership agreement, partnership organization and cleanup work and other collateral work. Based on my prior experience, the legal fees for full Regulation D offerings involving limited partnerships are approximately $12,000 to $18,000. If the partnership agreement is prepared by you or your agent and it does not require any significant work on our part to comply with appropriate tax considerations, this range will be reduced by $2,000 to $3,000. The firm's policy is to bill strictly on an hourly basis for services rendered.

Mr. John A. Schluter
March 17, 1993
Page 2

The estimates noted above are based on my prior experience of the time involved in matters of this nature; however, I cannot guarantee that the total costs will not exceed these estimates. The firm will send you a detailed monthly statement for services rendered. Because of the intensity of the legal effort necessary at the outset of a securities matter, we ask that all new clients initiate the relationship through the payment of a retainer. This is especially true in this case where we will have to set aside other matters to meet your time schedule. Accordingly, we feel that a $3,000 retainer is appropriate. Fees and expenses will be charged against your retainer until it is used up. The second payment for all accrued fees and expenses will be due at the time of delivery of the private placement memorandum. Thereafter, we will simply bill you through our normal monthly billing process, with payment due upon receipt. You understand, of course, that if the offering is not consummated for any reason, the legal fees and expenses incurred are not contingent and would be payable in the course of our monthly billing cycle. We charge interest on any balance outstanding over thirty (30) days.

When it is necessary for the firm to advance expenses on your behalf, such as long distance telephone calls, travel expenses, photocopying, and filing fees, those expenses will be added to the firm's monthly statement so that each month you will have a detailed summary of the legal services rendered and expenses advanced on your behalf. When it is appropriate to do so, the firm may ask you to pay costs directly to third parties. The firm will not incur any significant out-of-pocket expenses without first discussing these with you.

My hourly rate is $140 per hour. This rate may be modified from time to time, although at this moment I do not anticipate any changes. The monthly statements to you will reflect the rates in effect at the time of billing.

If you have any questions on these matters or if you have any questions regarding billing matters in the future, please feel free to contact me. Any questions you may have with respect to billing computation may be discussed with the firm's office administrator, Ms. Lisa Stansberry. If you agree to the proposed terms of engagement as described herein, please sign the enclosed copy of this letter on the signature line indicated and return it to this office. I am prepared to proceed immediately on the offering and will do so when you indicate that you are ready to go forward, upon receipt of the retainer discussed above.

Mr. John A. Schluter
March 17, 1993
Page 3

I am looking forward to working with you and I hope this will lead to a long-term, mutually rewarding relationship.

Sincerely,

Richard W. Jones

Enclosure

\WPD\RWJ\93MARCOR\RWJ463.2:lbk

Agreed to and accepted this 17th
day of March, 1993

_John A. Schluter_
John A. Schluter, individually

~~Landmark Partners, L.P.~~ _Summit Entertainment, Inc.,_

By: _John A. Schluter_
John A. Schluter, Authorized Agent

DECIDED FEBRUARY 26, 1998.

*Holland & Knight, Elizabeth C. Helm,* for appellant.
*Perrie, Buker, Stagg & Jones, Robert L. Bunner,* for appellee.